DALTON INVESTMENTS, INC.,
and Deborah Nooney Speier,
Plaintiffs/Respondents,

v.

NOONEY COMPANY, Nooney Properties, Inc., American Spectrum Realty Co., and Nooney Krombach Co., Defendants,

and

NationsBank, N.A.,
Intervenor/Appellant.

No. ED 76360.

Missouri Court of Appeals,
Eastern District,
Division Five.

Jan. 25, 2000.

Joseph J. Trad, Robert J. Will, St. Louis, for appellant.

Peter W. Herzog, Michael A. Vital, Tammy S. King, Peter D. Kerth, St. Louis, for respondents.

ROBERT E. CRIST, Senior Judge.

NationsBank, N.A. (Bank) appeals from partial summary judgment entered in favor of Dalton Investments, Inc. and Deborah Nooney Speier (Brokers) in their civil action brought under the Commercial Real Estate Brokers' Lien Act (CREBLA), sections 429.600 to 429.630, RSMo 1994. We reverse and remand.

The majority of the facts in this matter are not in dispute. In 1989, Nooney Properties, Inc. bought a retail strip mall in Florissant, Missouri. At that time, Nooney granted Bank a first Deed of Trust on the property. The Deed of Trust secured a guarantee of payment of a promissory note in the amount of $4.6 million. The Deed of Trust was recorded with the St. Louis County Recorder of Deeds. The Deed of Trust was later modified to also secure a guarantee of a second promissory note in the amount of $350,000.

On May 17, 1992, Nooney Company and its subsidiaries, including Nooney Properties, Inc., executed an agreement with Deborah Nooney Speier, naming her the exclusive listing agent for any of its properties. A subsequent agreement named Dalton, a company formed by Speier, as the exclusive listing agent for its properties and provided that Brokers would be paid a listing fee of six percent of the sale price for property.

On November 5, 1997, Nooney Properties sold the Florissant property to American Spectrum Realty Co. At the time, Nooney still owed $3,845,734 on the original note and $124,794.60 on the second note. After closing costs, $1,205,879.88 remained of the sale proceeds. From this amount, Southwest Bank was paid $317,940.98 in satisfaction of a judgment it had against the Nooney defendants. The remainder, $887,928.90, was to be paid to Bank for application to the amounts secured by the Deed of Trust. In exchange for this amount, Bank executed a Deed of Release, which was recorded with the Recorder of Deeds on November 6th.

On November 5th, Brokers filed a Notice of Brokers' Lien for $72,600 with the St. Louis County Recorder of Deeds pursuant to section 429.607. As a result of this lien and the fact the property was undersecured, $90,750 was taken from the $887,928.90 to be paid Bank and was placed in an escrow account pursuant to terms of an Escrow Agreement dated November 6, 1997 between Nooney, American Spectrum and First American Title Company. But for Broker's lien claim, Bank would have received the entire $887,938.90 at closing because of its first deed of trust. However, because of Brokers' lien, $90,750 was placed in an escrow account.

On February 24, 1998, Brokers filed a civil action against Nooney Company, Nooney Properties, Inc., American Spectrum Realty, Inc. and Nooney Krombach Company. In Count I, Brokers brought a claim to enforce a real estate brokers' lien

pursuant to section 429.618, seeking recovery of $72,000. In Count II, Brokers alleged a breach of contract. Bank filed a motion to intervene, which was granted. Bank also filed a counterclaim, alleging it was entitled to the funds held in the escrow account.

On February 8, 1999, Brokers filed a motion for summary judgment on Bank's counterclaim. Essentially, Brokers contended that Bank did not have any claim to the escrowed funds because it released its secured interest in the property on the date of closing. Therefore, Brokers argued that Bank did not have a valid, prior recorded lien or mortgage as required by section 429.618. Bank countered with its own motion for partial summary judgment against Brokers, contending it had a prior and superior claim to the escrowed funds. Nooney Properties joined in the motion.

On March 15, 1999, the trial court entered judgment in favor of Brokers on their motion for summary judgment and against Bank on their motion. The court concluded that although Bank had a prior recorded mortgage, it had released that mortgage at the closing of the sale of the property and thus, did not come within the provisions of section 429.618. As such, Bank had no right or interest in the escrowed funds. Bank filed a Motion to Amend the Judgment on April 7, 1999. Based on that motion, the court entered an amended judgment to "specifically show of record that there is no just reason for delay" and concluded the judgment was final for purposes of appeal pursuant to Rule 74.01(b). Bank appealed.

In Point I, Bank contends the trial court erred in granting partial summary judgment in favor of Brokers and against Bank because the language of section 429.618 provides that the holder of a prior recorded mortgage takes priority over a broker's lien and the court misinterpreted CREBLA to conclude Bank had no right to the escrowed funds.

When considering appeals from summary judgments, an appellate court reviews the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Review is essentially *de novo* and our criteria on appeal for testing the propriety of summary judgment are no different than those used by the trial court to determine if summary judgment was appropriate. *Id.* The propriety of summary judgment is purely an issue of law. As the trial court's judgment is based on the record submitted and the law, the appellate court need not defer to the trial court's decision. *Id.*

CREBLA is a fairly new addition to our statutes and only one case has interpreted any of its provisions. *See, Incentive Realty, Inc. v. Hawatmeh*, 983 S.W.2d 156 (Mo.App. E.D.1998). CREBLA generally provides a lien on commercial real estate in favor of real estate brokers "in the amount of compensation as agreed upon by the real estate broker and the real estate broker's client or customer." Section 429.605.1. Such a lien arises upon the recording of a notice under section 429.609. To enforce that lien, a broker must file a civil suit within six months. Section 429.616–.618. In this case, we assume for purposes of argument that Brokers have a valid lien pursuant to section 429.605. The question remains, however, whether Bank's lien retains any priority over Brokers' lien. We believe it does.

Section 429.618.2 provides that: "Valid prior recorded liens or mortgages shall have priority over a real estate broker's lien." Brokers agree with this statement and also agree that at one time, Bank did have a valid prior recorded lien which would have been entitled to priority. However, they aver that now Bank does not have a "valid" prior recorded lien or mortgage because at the closing they filed a general Deed of Release, releasing their security interest in the property. Howev-

er, Bank contends that it was required under law to release the deed of trust and that nothing in CREBLA indicates it should lose its lien priority if it releases a lien after and in reliance upon the establishment of an escrow account under section 429.627.

 We agree with Bank's interpretation of CREBLA. In reviewing CREBLA, we must ascertain the intent of the legislature by considering the plain and ordinary meaning of the words used in the statute. *Incentive Realty, Inc.*, 983 S.W.2d at 159. In addition, we may examine other sections of CREBLA to determine the legislature's intent. *See, Marre v. Reed,* 775 S.W.2d 951, 953 (Mo. banc 1989).

Section 429.627 provides:

Unless an alternative procedure is available and is acceptable to the transferee in a real estate transaction, if a claim for a real estate broker's lien has been filed with the county recorder of deeds and such lien would prevent the closing of a transaction or conveyance, an escrow account shall be established with the clerk of the circuit court in the county in which the commercial real estate is located from the proceeds of the transaction or conveyance in an amount sufficient to release the claim for the lien. The requirement to establish an escrow account, as provided in this section, shall not be cause for any party to refuse to close a transaction. The proceeds held in such escrow account shall be held by the circuit clerk until the parties' rights to the escrowed funds have been determined by written agreement of the parties, by a final judgment of the circuit court or by other process as may be agreed to by the parties. If funds sufficient to satisfy the amount claimed in the lien have been deposited in the escrow account, the real estate broker shall release the claim for the lien on such real estate.

 Here the plain and ordinary meaning of section 429.627 shows Bank's priority survived the closing. Under the law, Bank was required to release its security interest in the property at the closing. Section 429.627, which provides for the setting up of an escrow account, specifically states that "[t]he requirement to establish an escrow account ... shall not be cause for any party to refuse to close a transaction." In addition, Brokers' were required to release their claim for the lien on the property. These requirements are obviously to permit real estate transactions to close notwithstanding the assertion of a brokers' lien by providing a mechanism for later resolution of disputes through claims asserted against the escrow account. The statute clearly contemplates that both Bank and Broker would assert their claims against the escrow account. As a result, even though Bank released its security interest in the property, under CREBLA it preserved its pre-closing priority to later be asserted against the escrow account, rather than the property. Moreover, under the express terms of section 429.618.2, the prior recorded lien of Bank took priority over Brokers' lien claim, which arose quite some time after Bank's lien.

 Further, Brokers' contention that their lien followed and attached to the escrowed funds, but that secured lender's lien does not, would render an absurd result. Section 429.627 provides a mechanism for permitting real estate transactions to close notwithstanding a brokers' lien. Yet, if Brokers were correct, banks would never agree to release any undersecured loans and thus, the property could never sell and a broker's lien would be worth nothing. We must presume that the legislature did not intend an unreasonable or absurd result. *Dierkes v. Blue Cross and Blue Shield of Mo.,* 991 S.W.2d 662, 669 (Mo. banc 1999).

Therefore, we find the trial court erred in granting partial summary judgment in favor of Brokers. Rather, the undisputed facts and the express terms of CREBLA show that Bank is entitled, as a matter of

law, to summary judgment. At the time of closing, Nooney still owed Bank about $4 million on the promissory notes and even though it has made some payments on the notes since then, the amounts have not been significantly reduced. As Bank has priority over Brokers' lien, the entire amount in the escrow account should be awarded to Bank. Therefore, we grant Bank's first point. We note that notwithstanding this conclusion, Brokers are still free to pursue their breach of contract claim against the remaining defendants in its cause. Based on our decision in Point I, we need not address Bank's second point.

Brokers contend that even if this Court reverses the trial court's granting of summary judgment, Bank's underlying liens may be invalid and we should remand for a determination of this issue. Yet, in their motion for summary judgment and their response to Bank's motion, Brokers never alleged any facts disputing the validity of Bank's lien except to argue it failed to exist after Bank released it. Therefore, we reverse the trial court's judgment and remand to the trial court with directions to enter summary judgment in favor of Bank, awarding Bank all the funds in the escrow account.

Reversed and remanded with directions.

MARY RHODES RUSSELL, C.J., and LAWRENCE G. CRAHAN, J., concurs.