**Patricia A. (Mansell) BAXLEY, Appellant,**

v.

**Russell L. JARRED, Respondent.**

**No. WD 59761.**

Missouri Court of Appeals, Western District.

Dec. 17, 2002.

R. Gregory Gore, Independence, MO, for Appellant.

Caroline Carnes Gnefkow, Independence, MO, for Respondent.

Before HOWARD, P.J., and EDWIN H. SMITH and NEWTON, JJ.

EDWIN H. SMITH, Judge.

Patricia A. (Mansell) Baxley appeals the judgment of the Circuit Court of Jackson County: (1) denying her permission to relocate to South Carolina with the parties' minor child, Russell L. Jarred, Jr. (Junior); and (2) modifying the court's judgment declaring the respondent, Russell L. Jarred, to be the natural father of Junior, by changing primary physical custody of Junior from the appellant to the respondent.

The appellant raises two points on appeal. In Point I, she claims that the trial court erred in preventing her from relocating to South Carolina with Junior because, pursuant to § 452.377,[1] governing such relocations, the appellant had an absolute legal right to relocate without the express consent of the respondent or a court order. In Point II, she claims that the trial court erred in modifying its prior child custody decree by changing primary physical custody of Junior from the appellant to the respondent because it was not supported by substantial evidence, was against the weight of the evidence, and misapplied the law.

We reverse and remand.

## Facts

Junior was born on November 14, 1991. His parents, the appellant and the respondent, were never married. Pursuant to a paternity action filed in the Circuit Court of Jackson County, a judgment was entered on March 4, 1999, declaring the respondent to be the natural father of Junior. In addition, the judgment awarded the parties joint legal custody of Junior with sole physical custody and child support to the appellant, and specific visitation to the respondent.

On February 29, 2000, the respondent received a written notice by regular mail from the appellant advising him that she was relocating with Junior to South Carolina. In response, the respondent filed a motion in the trial court on May 2, 2000, requesting an order of the court preventing the proposed relocation and, in the alternative, seeking a modification of the existing visitation schedule should the court permit the relocation. Sometime after May 2, 2000, the appellant moved to South Carolina with Junior.

On June 19, 2000, the parties appeared in court on the respondent's motions. At that time, the case was continued with the parties stipulating to a temporary visitation order being entered whereby the respondent was to have substantial visitation with Junior during the summer of 2000, which included visitation through August.

On November 6, 2000, the respondent filed, without leave of court, a motion denominated "Respondent's First Amended Motion to Modify as to Custody, and Objection to Child's Relocation," seeking to prevent the appellant from relocating with Junior and changing his primary physical custody to the respondent. Leave to file the motion was granted on December 12,

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2000. A copy of the motion and notice of the hearing date, January 16, 2001, were mailed to the appellant.

On January 16, 2001, the respondent's amended motion was taken up and heard by Family Law Commissioner, Sherrill L. Rosen. Due to claimed confusion between the appellant and her counsel, neither she nor her counsel appeared for the hearing. Her counsel attempted to obtain a continuance the morning of the hearing, which was denied. The respondent was the only witness to testify at the hearing.

On January 26, 2001, Commissioner Rosen entered her findings and recommendations denying permission to the appellant to relocate with Junior to South Carolina and, *inter alia*, modifying the prior custody decree by awarding the respondent primary physical custody of Junior. On that same date, the Commissioner's findings and recommendations were adopted by the Honorable Marco A. Roldan as a judgment of the circuit court. On February 9, 2001, the appellant filed a motion for rehearing, which was denied on February 28, 2001.

This appeal follows.

## Standard of Review

Our review of a court-tried case involving matters of custody is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). *In re Marriage of Eikermann,* 48 S.W.3d 605, 608 (Mo.App.2001). We will affirm the judgment so long as it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Id.*

## I.

In Point I, the appellant claims that the trial court erred in preventing her from relocating with Junior to South Carolina, because, pursuant to § 452.377, governing such relocations, the appellant had an ab-solute legal right to relocate without the express consent of the respondent or court order. Specifically, she claims that she had an absolute legal right to relocate in that it was undisputed from the record that in accordance with the requirements of the statute, she did not relocate until sixty days had elapsed after she had notified the respondent of the proposed relocation and he had failed, within thirty days after receipt of the notice, to file a motion with the court seeking an order to prevent the relocation.

Given the appellant's claim in this point, we necessarily are called upon to interpret § 452.377. "In interpreting statutes, we are to ascertain the intent of the legislature." *Pavlica v. Dir. of Revenue,* 71 S.W.3d 186, 189 (Mo.App.2002) (citation omitted). In ascertaining the legislative intent, we are to give the language used its plain and ordinary meaning. *Id.* "Where the legislative intent is made evident by giving the language employed in the statute its plain and ordinary meaning, we are without authority to read into the statute an intent, which is contrary thereto." *Id.* (citation omitted). If the legislative intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied. *Id.*

Section 452.377, which was amended in 1998, reads, in pertinent part:

1. For purposes of this section and section 452.375, "relocate" or "relocation" means a change in the principal residence of a child for a period of ninety days or more, but does not include a temporary absence from the principal residence.

2. Notice of a proposed relocation of the residence of the child, or any party

entitled to custody or visitation of the child, shall be given in writing by certified mail, return receipt requested, to any party with custody or visitation rights. Absent exigent circumstances as determined by a court with jurisdiction, written notice shall be provided at least sixty days in advance of the proposed relocation. The notice of the proposed relocation shall include the following information:

(1) The intended new residence, including the specific address and mailing address, if known, and if not known, the city;

(2) The home telephone number of the new residence, if known;

(3) The date of the intended move or proposed relocation;

(4) A brief statement of the specific reasons for the proposed relocation of a child, if applicable; and

(5) A proposal for a revised schedule of custody or visitation with the child, if applicable.

. . .

6. If the parties agree to a revised schedule of custody and visitation for the child, which includes a parenting plan, they may submit the terms of such agreement to the court with a written affidavit signed by all parties with custody or visitation assenting to the terms of the agreement, and the court may order the revised parenting plan and applicable visitation schedule without a hearing.

7. The residence of the child may be relocated sixty days after providing notice, as required by this section, unless a parent files a motion seeking an order to prevent the relocation within thirty days after receipt of such notice. Such motion shall be accompanied by an affidavit setting forth the specific factual basis supporting a prohibition of the relocation. The person seeking relocation shall file a response to the motion within fourteen days, unless extended by the court for good cause, and include a counter-affidavit setting forth the facts in support of the relocation as well as a proposed revised parenting plan for the child.

. . .

9. The party seeking to relocate shall have the burden of proving that the proposed relocation is made in good faith and is in the best interest of the child.

10. If relocation is permitted:

(1) The court shall order contact with the nonrelocating party including custody or visitation and telephone access sufficient to assure that the child has frequent, continuing and meaningful contact with the nonrelocating party unless the child's best interest warrants otherwise; and

(2) The court shall specify how the transportation costs will be allocated between the parties and adjust the child support, as appropriate, considering the costs of transportation.

Prior to the 1998 amendment, § 452.377, RSMo 1997, read:

A person entitled to the custody of a child shall not change the residence of the child to another state or remove the child from this state for a period of time exceeding ninety days except upon order of the court or with the written consent of the parties with custody or visitation rights. Where the noncustodial person has been given visitation rights by the custody decree, such court permission may be granted only after notice to the person having visitation rights and after opportunity for hearing. Violation of a court order under this section may be deemed a change of circumstance under section 452.410, allowing the court to modify the prior custody decree.

The prior version of the statute provided for two instances in which the primary physical residence of a child could be relocated to another state: (1) upon the express written consent of the nonrelocating parent; or (2) upon an order of the circuit court, where the nonrelocating parent refused to expressly consent in writing. As to cases falling into the second category, our appellate courts adopted the four-part test set out in *Michel v. Michel*, 834 S.W.2d 773, 777 (Mo.App.1992), to guide trial courts in determining whether to grant permission to relocate. The test provided that four factors were to be considered in determining the propriety of a relocation by a custodial parent:

(1) [T]he prospective advantages of the move in improving the general quality of life for the custodial parent and child, (2) the integrity of the custodial parent's motives in relocating (whether primarily to defeat or frustrate visitation and whether the custodial parent is likely to comply with substitute visitation orders), (3) the integrity of the noncustodial parent's motives for opposing relocation and the extent to which it is intended to secure a financial advantage with respect to continuing child support, and (4) the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is permitted.

*Id.* (citation omitted).

After the 1998 amendment of § 452.377, the Missouri Supreme Court in *Stowe v.*

*Spence*, 41 S.W.3d 468, 469 (Mo. *banc* 2001), held that "[i]n lieu of [the *Michel* test], section 452.377 now requires the court to determine that the relocation: (1) is in the best interests of the child, (2) is made in good faith, and (3) if ordered, complies with the requirements of subsection 10." Although at first blush the language employed by the Court would seem to indicate that it was recognizing that the amended version of § 452.377 provided for a three-part test for relocation, closer inspection would indicate otherwise. Obviously, the first two elements of the § 452.377 test referenced by the Supreme Court set forth the requirements found in § 452.377.9, while the third referenced element deals with the requirements found in § 452.377.10, which by the express terms of the subsection only come into play "[i]f relocation is permitted." The "if" at the beginning of the phrase indicates that before the requirements of subsection 10 come into play, a condition precedent must be satisfied, the condition being permission to relocate. *See Lonergan v. May*, 53 S.W.3d 122, 130 (Mo.App.2001) (stating that the term "if" signifies a condition precedent that must be satisfied). Thus, logically the requirements of § 452.377.10 are not part of the test for being permitted to relocate by the trial court, but are requirements that must be met *after* relocation is deemed permissible under the statute.[2]

■ The nearly complete overhaul of § 452.377 in 1998 reflected an obvious dis-

---

**2.** As to the differences between the *Michel* test and the relocation test set forth in the present version of § 452.377, the court in *Abernathy v. Meier*, 45 S.W.3d 917 (Mo.App.2001), stated:

There are three essential differences between the standard announced in sections 9 and 10 of § 452.377 and the four-part *Michel* test. First, unlike the *Michel* test, section 9

makes no reference to the custodial parent's welfare. Rather than looking to the "general quality of life for the custodial parent and child," section 9 requires the court to determine only that the relocation is in the best interests of the child. This, presumably, is to be done in accordance with the factors laid out in § 452.375.2. Second, section 9 drops the requirement that the non-relocating par-

enchantment of the legislature with the existing version of the statute and an attempt to set forth a more detailed procedure for dealing with relocations to insure that relocating parents and nonrelocating parents would be treated consistently, equally, and fairly, while protecting the best interests of the child. While clearly recognizing the need of a nonrelocating parent for notice and an opportunity to be heard before relocation is permitted, the statute, by limiting the time within which a nonrelocating parent can object to a proposed relocation, also recognizes that the relocating parent should not be unduly delayed from relocating where the nonrelocating parent does not affirmatively object in a timely fashion. In that vein, giving the language of § 452.377 its plain and ordinary meaning, it is clear to us that the present version of the statute, like the prior version, authorizes two separate modes or tracks for a parent's being permitted to relocate with a child: (1) non-court-ordered relocation where the nonrelocating parent *does not object to relocation in a timely fashion*, as provided in § 452.377.7, which would necessarily include cases where the nonrelocating parent affirmatively consents to relocation; and

(2) court-ordered relocation where the nonrelocating parent *does object to relocation in a timely fashion*, as provided in § 452.377.7, but relocation is permitted by order of the circuit court upon a determination that the proposed relocation is being made in good faith and is in the best interests of the child, as provided in § 452.377.9.

 In interpreting § 452.377 as providing for non-court-ordered relocation, as well as court-ordered relocation, we primarily rely on the first sentence of subsection 7, which reads: "The residence of the child may be relocated sixty days after providing notice, as required by this section, unless a parent files a motion seeking an order to prevent the relocation within thirty days after receipt of such notice." There can be no doubt from that language that if the notice requirement of the statute has been satisfied and no motion objecting to the relocation is timely filed, the nonrelocating parent is deemed to have consented to the relocation such that the relocating parent is free to relocate sixty days after the receipt of the notice, without the express consent of the nonrelocating parent or court order.[3] Thus, while

---

ent show good faith in opposing the move and simply requires the relocating parent to shoulder the burden of establishing good faith in proposing the move. Third, section 10 of § 452.377 expands on the fourth part of the *Michel* test. *Michel* required the court to determine whether there was a "realistic opportunity for visitation" that would "provide an adequate basis for preserving and fostering the non-custodial parent's relationship with the child ..." Section 10 requires the court not only "to assure that the child has frequent, continuing and meaningful contact" with the noncustodial parent, but also requires the court to allocate the transportation costs and adjust the child support accordingly.

*Id.* at 923–24 (citations omitted).

**3.** It is unclear why the legislature would require an additional thirty days to elapse, after

the time for filing a motion objecting to the relocation had passed, before the relocating parent is permitted to actually relocate. It would seem logical that once the time for filing a motion objecting to a proposed relocation had passed, the relocating parent would be free to relocate immediately in that under the express terms of the statute, once the opportunity to object had passed, no apparent purpose would be served by requiring the relocating parent to delay the relocation that is already, by operation of the statute, permitted and thus, logically not subject to challenge by the nonrelocating parent. Try as we might, we cannot ascertain any purpose for requiring the relocating parent to wait an additional thirty days to relocate after the time for filing a motion objecting to a proposed relocation has passed.

the prior version of the statute permitted non-court-ordered relocation where the nonrelocating parent expressly consented to relocation in writing, under the new version, non-court-ordered relocation is permitted in cases of both express and implied consent, implied consent occurring where the nonrelocating parent fails to file a timely objection to the relocation.

Reading in isolation the language of § 452.377.9, that the "party seeking to relocate shall have the burden of proving that the proposed relocation is made in good faith and in the best interest of the child," one could conceivably make the argument that the legislature intended that every proposed relocation was to be approved and ordered by the circuit court in that the "burden of proving" language connotes an adjudication by the court. Consistent with such an argument would be the Supreme Court's holding in *Stowe* as to the appropriate test for relocation, after the 1998 amendment, set forth, *supra*, in that in declaring the test of § 452.377, the Court did not make any allowance for a relocating parent being permitted to relocate under the statute without court order. The problem with such an argument is that § 452.377.9 cannot be read in isolation, but must be read in conjunction with § 452.377.7; and in *Stowe*, the Court was not confronted with the issue of whether § 452.377 could be read as providing two alternative tracks for a parent being permitted to relocate.

Given the facts in *Stowe*, we do not believe that in holding as it did, the *Stowe* Court meant to be exclusive as to the means by which relocation is permitted under the statute, but only intended to be inclusive as to court-ordered relocation being authorized by § 452.377 and to set forth the requirements for such relocation. That is so in that in *Stowe*, the issue was not whether the relocating parent could relocate without a court order. Rather there, the relocating parent had, in fact, objected to the proposed relocation, requiring the trial court to rule on whether the relocating parent would be permitted to relocate with the child. In fact, the case was pending before the trial court when § 452.377 was amended in 1998. Thus, the issue in *Stowe* was what was required to be shown under the new version of the statute to gain permission from the trial court to relocate with the child. The Court was not asked to consider whether the new version of § 452.377 provided for an alternative track or mode for being permitted to relocate. In light of that fact and reading § 452.377.9 in conjunction with the express provisions of § 452.377.7, as we must, *see Jackson v. Bd. of Dirs. of Sch. Dist. of Kansas City*, 9 S.W.3d 68, 72 (Mo.App.2000) (stating that all provisions in a statute or legislative act concerning the same subject matter should be read together to ascertain the legislative intent), the only conclusion there can be is that the directive of § 452.377.9 was not intended to limit relocations to only those which are court-ordered, but to set forth the required test on which court-ordered relocations are to be predicated.

Having determined that § 452.377 provides two modes or tracks of permissible relocation, court-ordered and non-court-ordered, we next turn to the requirements of subsection 10 of § 452.377, to determine their role in the relocation procedure. As we discuss, *supra*, the requirements of § 452.377.10 do not come into play in deciding whether relocation is actually permitted, but are requirements that must be satisfied *after* relocation is permitted. Thus, we read § 452.377 as setting forth a two-step procedure, the first step dealing with whether relocation is actually permitted and the second step dealing with the requirements of § 452.377.10.

As to the second step of the relocation procedure, § 452.377.10 reads:

If relocation is permitted:

(1) The court shall order contact with the nonrelocating party including custody or visitation and telephone access sufficient to assure that the child has frequent, continuing and meaningful contact with the nonrelocating party unless the child's best interest warrants otherwise; and

(2) The court shall specify how the transportation costs will be allocated between the parties and adjust the child support, as appropriate, considering the costs of transportation.

By including subsection 10 in the 1998 amendment of § 452.377, the legislature obviously recognized that, as a general rule, relocation renders existing custody/visitation schedules and child support orders unreasonable due to increased travel distances between parents and added expenses for travel to effectuate visitation. Section 452.377.10 is an obvious attempt to insure that those issues are dealt with as a matter of course in cases of relocation, by requiring that the court: (1) order such contact with the nonrelocating parent as needed to assure that the child has frequent, continuing, and meaningful contact with the nonrelocating parent; and (2) specify how the added transportation costs caused by the relocation are to be allocated between the parties and adjust child support, as appropriate, to reflect such allocation. Given the express language of § 452.377.10, specifically, the "court shall order" in § 452.377.10(1), and the "court shall specify" in § 452.377.10(2), it is clear that the legislature was mandating that the trial court consider, *sua sponte*, whether to modify the existing custody/visitation schedule and child support order as necessary in a case of permissible relocation.

Section 452.377.10 does not differentiate between court-ordered and non-court-ordered relocation. It simply provides that "[i]f relocation is permitted," then the enumerated requirements of the subsection must be satisfied. Because § 452.377 provides for both court-ordered and non-court-ordered relocation, the language of § 452.377.10, "[i]f relocation is permitted," would suggest that the requirements of that subsection were intended to apply to both types of permissible relocations. With respect to court-ordered relocation, the § 452.377.10 requirements, from a procedural standpoint, would mesh nicely with the overall scheme of the statute inasmuch as the case would already be before the trial court on the issue of whether location should be permitted. The same, of course, cannot be said in every instance of non-court-ordered relocation. While it is true that a court proceeding may be initiated in what ultimately results in a permissible non-court-ordered relocation, where the nonrelocating parent challenges whether the relocating parent had satisfied the statutory requirements of § 452.377 for non-court-ordered relocation, it is equally true that permissible non-court-ordered relocations may occur without benefit of a court challenge. In such instances, the question naturally arises as to what procedure is to be followed to satisfy the requirements of § 452.377.10 or whether the legislature even intended that the § 452.377.10 requirements apply.

Conceivably an argument could be made that the requirements of § 452.377.10 were not intended to apply to permissible non-court-ordered relocations, not only because the satisfaction of the requirements would, in many instances, conflict procedurally with such a relocation, as noted, *supra,* but because of the practical effect of the nonrelocating parent's failure to timely object to the required notice of § 452.377.2 on the issue of modifying the custody/visitation

schedule. To relocate the residence of a child or any party entitled to custody or visitation of the child, notice is required to be "given in writing by certified mail, return receipt requested, to any party with custody or visitation rights." § 452.377.2. This notice must include:

(1) The intended new residence, including the specific address and mailing address, if known, and if not known, the city;

(2) The home telephone number of the new residence, if known;

(3) The date of the intended move or proposed relocation;

(4) A brief statement of the specific reasons for the proposed relocation of a child, if applicable; and

(5) A proposal for a revised schedule of custody or visitation with the child, if applicable.

*Id.* Thus, given the requirement that the notice contain a "revised schedule of custody or visitation with the child," an argument could be made that the nonrelocating parent's failure to object to the proposed relocation not only implicitly waives any objection to the relocation itself and acts as implied consent to the relocation, but waives any objection to the relocating parent's proposal for a revised schedule of custody or visitation with the child and acts as implied consent to the proposal, which would, in effect, serve to satisfy the requirement of § 452.377.10(1), concerning a court order assuring frequent, continuing, and meaningful contact with the non-relocating parent. While such an argument could be made with respect to the requirement of § 452.377.10(1), a similar argument could not be made with respect to the § 452.377.10(2) requirement in that the statutory notice of relocation does not reference a proposed travel expense allocation or any adjustment of child support necessitated by the allocation. This fact

cuts against an interpretation that the requirements of § 452.377.10 were not intended to apply to a permissible non-court-ordered relocation. Another fact cutting against such an interpretation is the fact that court orders concerning child custody and visitation cannot be unilaterally modified by the parents, but are subject to court approval as being in the best interests of the child. §· 452.410.1; § 452.400.2. That being the case, it is illogical to suggest that the legislature would allow non-court-ordered relocation, requiring in many cases a significant change in the custody/visitation schedule due to the distance between the parents' homes after relocation, without requiring approval of such a modification by the trial court as being in the child's best interests.

While § 452.377.10 does not expressly reference court-ordered and non-court-ordered relocations and certainly there is some confusion as to how the requirements of § 452.377.10 would be satisfied in cases of permissible non-court-ordered relocations not challenged in court by the nonrelocating parent, when that subsection is read in the context of the entire statute, several clear reasons present themselves for interpreting § 452.377.10 as applying in both instances of permissible relocation, court-ordered and non-court-ordered. First, as noted, *supra,* § 452.377.10 begins with the phrase, "[i]f relocation is permitted." It does not read if relocation is approved or ordered by the court, which would indicate an intent that the requirements of § 452.377.10 are not limited solely to court-ordered relocations, but are to apply to any permissible relocation under the statute, which based on the express language of § 452.377.7, would include non-court-ordered relocations, as well as court-ordered relocations.

A second reason for interpreting § 452.377.10 as applying in both instances

of permissible relocation, court-ordered and non-court-ordered, can be found in § 452.377.6, which expressly provides for court approval of an agreement of the parents as to a revised schedule of custody and visitation precipitated by a permissible relocation. Section 452.377.6 reads:

If the parties agree to a revised schedule of custody and visitation for the child, which includes a parenting plan, they may submit the terms of such agreement to the court with a written affidavit signed by all parties with custody or visitation assenting to the terms of the agreement, and the court may order the revised parenting plan and applicable visitation schedule without a hearing.

This provision corresponds to the requirement of § 452.377.10(1) and, absent any terms of limitation, would appear to apply in any permissible relocation, court-ordered or non-court-ordered, where the parties have expressly agreed to a revised custody/visitation schedule, as necessitated by the relocation. From this, it can be inferred that the requirement of § 452.377.10(1) was intended to apply to both court-ordered and non-court-ordered relocations, even where the parties were not in agreement as to a revised schedule, in that it would be illogical to infer that the legislature intended to require court approval of an agreed-upon revised schedule of custody and visitation, necessitated by a permissible court-ordered or non-court-ordered relocation, but did not so intend where there is no such agreement. Of course, if this line of reasoning is correct, why did the legislature not include in § 452.377.6 an equivalent provision with respect to § 452.377.10(2) concerning the allocation of travel expenses precipitated by the permitted relocation and a modification of the child support order reflecting the allocation? One answer might be that under the mandatory *Woolridge* procedure for ordering child support, the trial court does not "approve" child support agreements, but independently calculates the correct support award. *Woolridge v. Woolridge*, 915 S.W.2d 372, 378–80 (Mo. App.1996). In any event, when § 452.377.10 is read in the context of the entire statute, we believe that it is clear and unambiguous that in every case of permissible relocation, § 452.377.10(1) and § 452.377.10(2) apply, recognizing that the requirements of the former can be effectuated via the procedure outlined in § 452.377.6, where the latter cannot.

■ Having determined that the legislature intended for the requirements of § 452.377.10 to apply to both court-ordered and non-court-ordered relocations, the issue still remains as to how procedurally a non-court-ordered relocation, which is not otherwise already before the court, is to come before the court for satisfaction of the § 452.377.10 requirements. In that regard, § 452.377.2, concerning the relocation notice, does not provide for any notice to the court of the proposed relocation. Thus, unless an action concerning the relocation is filed with the court, either objecting to the relocation itself or specifically asking the court to determine and enter its orders with respect to the § 452.377.10 requirements, the court would have no reason to know of the relocation and the triggering of the § 452.377.10 requirements so as to allow it to act *sua sponte* with respect thereto.

■ While the legislature, in order to insure compliance with § 452.377.10 in cases of permissible non-court-ordered relocation, not otherwise already before the court, could have included in the statute some provision mandating that the relocating parent file a motion with the court seeking compliance with the dictates of § 452.377.10 or forfeiting the right to relocate, it did not. One explanation for this

may be that the legislature assumed that compliance with the § 452.377.10 require-ments would at some point, in the normal course of things, be pursued by the nonre-locating parent, who would either be objecting to the proposed relocation or the proposed revised schedule of custody or visitation set out in the relocation notice or both, and/or would be seeking a reduction in child support to reflect the added expense for travel to effectuate the modified visitation. However, it is conceivable that in a permissible non-court-ordered relocation the nonrelocating parent would not seek an order from the trial court to satisfy the requirements of § 452.377.10. In recognition of that fact and in order to insure that the § 452.377.10 requirements were satisfied in every case of permissible relocation, court-ordered and non-court-ordered, we would have reasonably expected the statute to address that situation. The fact that it does not might be the basis for arguing that the § 452.377.10 requirements were not intended to apply in a non-court-ordered relocation. However, as we discuss, *supra*, when the language of the statute is read as a whole, the opposite conclusion must be drawn. Thus, while on the one hand we are convinced that the legislature intended that the trial court satisfy the requirements of § 452.377.10 in both court-ordered and non-court-ordered relocations which come before the court on a motion either seeking an order to prevent a proposed relocation or a motion for the court to comply with the directives of § 452.377.10, it is clear that the legislature did not provide for a mechanism to ensure that the § 452.377.10 requirements were addressed in non-court-ordered relocation cases not otherwise before the court. Rather, it appears that, inasmuch as the requirements of § 452.377.10 were inserted in the statute to primarily protect the interests of the nonrelocating parent, the legislature was content to let that parent carry the burden of insuring that the adjustments provided in § 452.377.10 would be considered by the court. Thus, in cases of permissible non-court-ordered relocation, where both parents either expressly or tacitly agree to a relocation and effectuate a modification of visitation and/or child support in light thereof, without benefit of a court order, the existing orders with respect to visitation and child support would remain in effect, unless and until subsequently modified by the court under the authority provided in § 452.377.10.

Having interpreted § 452.377 to determine the procedure for relocating, we now turn to the appellant's claim in this point that in accordance with that statute, she had an absolute legal right to relocate with the parties' minor child, without the express permission of the respondent or court order because the respondent waived any objection to the relocation by failing to file a timely motion objecting to the proposed relocation. For the respondent's part, he does not contend that the statute does not provide for relocation without court order but, instead, contends that the appellant did not comply with the requirements of § 452.377 for being permitted to relocate without prior court approval.

As discussed, *supra*, to relocate the residence of a child or any party entitled to custody or visitation of the child, notice is required to be "given in writing by certified mail, return receipt requested, to any party with custody or visitation rights." § 452.377.2. Absent exigent circumstances, the notice must be "provided at least sixty days in advance of the proposed relocation." *Id.* Unless the nonrelocating "parent files a motion seeking an order to prevent the relocation within thirty days after receipt of such notice," the relocating parent may relocate with the child sixty days after the requisite notice has been sent. § 452.377.7. The motion to prevent reloca-

tion must be "accompanied by an affidavit setting forth the specific factual basis supporting a prohibition of the relocation." *Id.* If a motion is timely filed seeking to prevent the relocation, the relocating parent is required to "file a response to the motion within fourteen days, unless extended by the court for good cause, and include a counter-affidavit setting forth the facts in support of the relocation as well as a proposed revised parenting plan for the child." *Id.* The appellant claims that in accordance with § 452.377.2, she sent the requisite notice of proposed relocation such that if the respondent wanted to prevent the proposed relocation, he was required to file a motion in accordance with § 452.377.7, which he failed to do, such that she had an absolute right to relocate the residence of the child, without the express consent of the respondent or a court order. We agree.

■ In a letter to the appellant dated March 13, 2000, admitted at trial as Respondent's Exhibit 4, the respondent wrote, in pertinent part: "In response to your letter *I received Feb. 29, 2000* notifying of Russell Jarred Jr. being relocated to Conway, South Carolina. I would like to answer and respond in a calm and cordial manner but at the same time also stress strongly that I do not aprove [*sic*] of this nor do I consent to this in any way." (Emphasis added). Thus, despite the respondent's claim in his brief that there was nothing of record to indicate that he received notice more than thirty days before he filed his motion to object to the appellant's relocation, the record clearly reflects otherwise. The "letter" of the appellant, to which the respondent refers in Respondent's Exhibit 4, was admitted at trial as Respondent's Exhibit 3. It reads:

Russell Jarred Sr.

I am notifying you of Russell Jarred Jr.'s relocation in accordance with pg. 11 of the judgment entry.

1. We are moving to Conway, South Carolina. We will notify you of the address of our residents [*sic*] when we know it.
2. We will also give you the phone number of residency [*sic*] when we acquire one.
3. The approximate date of our move will be May 1st, 2000.
4. Some of the reasons we are moving are: better neighborhood, better schools, more and better family infrastructure.
5. You can come and visit anytime you able too [*sic*]. You may have Russell Jarred Jr. for Spring breaks and/or summer breaks.

We are open for farther [*sic*] discussion about the visitation.

[Signature of the appellant]

Patricia Baxley

■ Respondent's Exhibit 3 meets all of the requirements of § 452.377.2 concerning the relocation notice, except that there is nothing in the record that indicates that it was sent by certified mail, return receipt requested. That fact is of no consequence, however, given the particular circumstances of our case. Where as here the evidence is undisputed that actual notice of the relocating parent's proposed relocation with the child was received by the nonrelocating parent in a timely fashion, the fact that the notice was not sent by certified mail does not invalidate the notice for purposes of § 452.377. *Weaver v. Kelling*, 53 S.W.3d 610, 616 (Mo.App.2001).

■ Having received actual notice of the appellant's intent to relocate on February 29, 2000, the respondent, in accordance with § 452.377.7 and in order to prevent the appellant from relocating with the par-

ties' child and cause a hearing to be conducted by the trial court on the appellant's proposed relocation, was required to file a motion objecting to the relocation with the court within thirty days after his receipt of the notice of proposed relocation. Thus, the respondent's motion objecting to the proposed relocation by the appellant was required to have been filed on or before March 30, 2000. The record indicates, however, that the respondent's motion was not filed until May 2, 2000, some sixty-three days after receipt of the notice. As such, the appellant, in accordance with § 452.377.7, was free to relocate with the child after sixty days had elapsed from the time the respondent received the notice on February 29. The sixty days elapsed on April 29, meaning that the appellant was free to relocate with the child, without the express consent of the respondent or court order, on April 30 or thereafter. In that regard, according to the respondent's own sworn testimony at trial, the appellant relocated with the child sometime after she was served with a copy of the respondent's motion on May 2, 2000. Thus, the respondent's objection to the appellant's proposed relocation was, as a matter of law, untimely and not properly before the trial court such that the court's order preventing the appellant from relocating to South Carolina with the parties' child was void *ab initio*, requiring reversal of the court's judgment purporting to prevent the appellant's relocation.

■ Although the respondent's objection to the appellant's relocation was not properly before the trial court, as we discuss, *supra*, the court, pursuant to § 452.377.10, was nonetheless required: (1) to review the existing visitation schedule to determine the need for its modification in light of the relocation; and (2) to allocate the added transportation costs caused by the relocation and adjust the existing child support award, as appropriate. This it did not do. Accordingly, in reversing the trial court's judgment denying the appellant's request to relocate, we must remand with directions for the court to conduct the § 452.377.10 review and enter its orders in accordance therewith.

## II.

■ In Point II, the appellant claims that the trial court erred in modifying its prior child custody decree by changing primary physical custody from the appellant to the respondent because the modification was not supported by substantial evidence, was against the weight of the evidence, and misapplied the law. Because we find that the record does not support the requisite finding of a substantial change of circumstances of the child or the appellant rendering it in the best interests of the child to change the child's primary physical custody from the appellant to the respondent, we reverse the trial court's modification of custody.

■ Section 452.410, governing modifications of custody, reads:

1. Except as provided in subsection 2 of this section, the court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. Notwithstanding any other provision of this section or sections 452.375 and 452.400, any custody order entered by any court in this state or any other state prior to August 13, 1984, may, subject to jurisdictional requirements, be modified to allow for joint custody in accordance

with section 452.375, without any further showing.

2. If either parent files a motion to modify an award of joint legal custody or joint physical custody, each party shall be entitled to a change of judge as provided by supreme court rule.

That section has been interpreted as requiring the movant to plead and prove, by a preponderance of the evidence, a substantial change in the circumstances of the child or custodial parent, rendering it in the child's best interests to change custody. *Love v. Love*, 75 S.W.3d 747, 762 (Mo.App.2002). The court does not reach the issue of best interests unless and until a substantial change of circumstances is found. *Id.* The change of circumstances to satisfy § 452.410 must be a change in the circumstances of the child or custodial parent. *Smith v. Smith*, 75 S.W.3d 815, 819 (Mo.App.2002).

In response to the appellant's notice of proposed relocation, the respondent, on May 2, 2000, filed a motion, entitled "Motion to Modify Visitation and Object [*sic*] to Child's Relocation," seeking initially to prevent the appellant's relocating with the child to South Carolina and, in the alternative, if relocation were allowed, an order: (1) "requiring [the appellant] to be responsible for all transportation and for all transportation costs in connection with [the respondent's] visitation with the minor child"; (2) reducing the respondent's child support "in the amount of any transportation costs he incurs in connection with visitation"; and (3) "granting [the respondent] visitation periods consisting of the entire summer, all of spring break, all of Christmas/winter break, and one weekend each month." The respondent's requests for relief were, of course, consistent with the requirements of § 452.377.10, which we discuss in Point I, *supra*. In support

of his motion, the respondent alleged that since the custody decree of March 4, 1999:

a. That [appellant] desires to relocate, moving the child with her to 1402 Cavalier Road, Conway, South Carolina 29526;

b. That [appellant] failed to provide proper notice, because her notice did not include a specific revised schedule of visitation;

c. That the [appellant's] motives in relocating include that she is attempting to defeat or to frustrate Respondent's visitation rights;

d. That there is no realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the Respondent's relationship with the child if the move is permitted.

On November 6, 2000, the respondent filed with the clerk of the court "Respondent's First Amended Motion to Modify as to Custody, and Objection to Child's Relocation." Although stamped filed on November 6, leave to file the motion was not actually granted by the trial court until December 12, 2000. It is significant to note that although the respondent denominated his motion as a first amended motion to modify "custody," as noted, *supra*, he had not previously filed a motion to modify custody to amend. In paragraph 2 of his amended motion, the respondent alleged that there had been a substantial and continuing change of circumstances warranting a modification of custody under § 452.410 in that since the entry of the trial court's modification judgment of March 4, 1999:

a. That [appellant] has, without permission of the Court and in spite of Respondent's objection, relocated, moving the child with her to 1402 Cavalier Road, Conway, South Carolina 29526;

b. That [appellant] failed to provide proper notice, because her notice did not include a specific revised schedule of visitation;

c. That the [appellant's] motives in relocating include that she is attempting to defeat or to frustrate Respondent's visitation rights;

d. That there is no realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the Respondent's relationship with the child if the move is permitted;

e. That [the appellant] states to [the respondent] that he will not ever get any more visitation with the child in Missouri;

f. [The appellant][4] has denied [the respondent] all visitation since the summer of 2000;

g. That [the appellant] has stated to [the respondent] that she will not cooperate with any court order;

h. That [the respondent] has not been permitted any telephone contact with his son since the summer of 2000;

i. That [the respondent's] telephone calls to [the appellant's] home have not been answered, and messages he has left on the answering machine have not been returned, causing [the respondent] to believe that [the appellant] has disappeared with the child.[5]

The first four allegations of the respondent's amended motion are nearly identical to the allegations contained in his initial motion to prevent the appellant from relocating and to modify visitation and child support and pertain only to those issues, which issues we have already determined against the respondent in Point I, *supra*. The remaining allegations deal with visitation issues that arose out of the appellant's relocation to South Carolina. The question then is whether those allegations, even if true, would constitute a sufficient basis for modifying the primary physical custody of a child where the relocation was permitted under the relocation statute, § 452.377, as found in Point I.

■■■ Regardless of which § 452.377 track is invoked for being allowed to relocate, it would seem axiomatic that if a parent is allowed to relocate under the statute, the relocation itself could not constitute a substantial change of circumstances justifying a modification of custody under § 452.410. This is so in that it would make no sense for relocation to be allowed under the statute and then in the same breath essentially say it is not by changing primary physical custody on that very basis. It must be remembered that the permission for relocation of § 452.377 is not directed at the parent's relocation alone, but the parent's relocation *with* the child. In this regard, the fact that the best interests of a child are always paramount in determining custody and visitation orders and modifications thereof, *Ficker v. Ficker*, 62 S.W.3d 496, 499 (Mo.App.2001), we can only assume that the legislature, in its wisdom, was of a mind that compliance with § 452.377 in relocating a child to another state would assure that the best interests of a child would be served, regardless of the statutory track used to relocate. The legislature is presumed not to enact statutes that would render an absurd result. *Dalton Invs., Inc. v. Noo-*

---

4. Legal file indicated "Respondent."

5. The respondent alleged what he denominated as a tenth change of circumstances, which was nothing more than a statement that he desired primary physical custody of the minor child with reasonable and specific visitation to the appellant.

*ney Co.*, 10 S.W.3d 590, 593 (Mo.App.2000). Thus, while we accept the fact that it is inevitable that the custody laws of this state will confound parents from time to time, we sincerely doubt that the legislature intended to totally confuse and frustrate parents involved in custody disputes concerning relocation by setting forth a procedure for a parent to relocate with a child to another state, but then essentially punishing that same parent for relocating in accordance with that prescribed statutory procedure.

Further support for not allowing a statutorily permissible relocation to be used as a substantial change of circumstances warranting a modification of primary physical custody under § 452.410 can be found in the express language of § 452.377, providing that a relocation effectuated without complying with its requirements can be treated as a factor or change of circumstance in modifying custody or visitation. In that regard: (1) § 452.377.5 reads: "The court shall consider a failure to provide notice of a proposed relocation of a child as: (1) A factor in determining whether custody and visitation should be modified"; (2) § 452.377.11 reads: "[Y]our failure to notify a party of a relocation of the child may be considered in a proceeding to modify custody or visitation with the child," which is essentially a reiteration of the language in § 452.377.5; and (3) § 452.377.12 reads: "Violation of the provisions of this section or a court order under this section may be deemed a change of circumstance under section 452.410, allowing the court to modify the prior custody decree." In contrast to these express provisions, § 452.377 does not provide that a relocation done in compliance therewith may be deemed a substantial change of circumstances, justifying a modification of custody pursuant to § 452.410. In expressly providing that the former situation would give rise to a substantial change of circumstances sufficient to modify custody, but not so providing in the latter situation, we can infer that the legislature did not intend for a relocation permitted by § 452.377 to be deemed a substantial change of circumstances on which to predicate a modification of custody under § 452.410. *See Groh v. Ballard,* 965 S.W.2d 872, 874 (Mo.App.1998) (stating the rule of statutory construction that the express mention of one thing implies the exclusion of another).

In apparent conflict with the foregoing interpretation is § 452.411. It provides: "If either parent of a child changes his residence to another state, such change of residence of the parent shall be deemed a change of circumstances under section 452.410, allowing the court to modify a prior visitation or custody decree." § 452.411. Where two related sections appear to be clear and unambiguous when read in isolation, but conflict when read together, we are to first attempt to harmonize the two, giving effect to both to the extent possible. *State ex rel. Riordan v. Dierker,* 956 S.W.2d 258, 260 (Mo. *banc* 1997). Given this overriding consideration, we believe that § 452.377 and § 452.411 can be harmonized by reading § 452.411 as only applying where relocation occurs in violation of § 452.377. This fact is made clear by the express references in § 452.377 setting forth what violations of the provisions of that section are sufficient to warrant a modification of custody, which we discuss, *supra*.

Further reason for a permissible relocation not being a substantial change of circumstances justifying a change in primary physical custody under § 452.410 can be found in the legislature's enactment of § 452.377.10. As we discuss, *supra*, the enactment of § 452.377.10 was in recognition of the fact that relocation would likely

disrupt the existing custody and visitation schedule, rendering it unreasonable. Thus, it is apparent that the legislature intended that this disruption be dealt with in accordance with the provisions of § 452.377.10 by otherwise modifying the custody and visitation schedule, not by changing the primary physical custody of the child to the nonrelocating parent.

It is apparent from the record that the trial court modified the primary physical custody of Junior in this case based on the appellant's relocation without the express approval of the respondent or the court and its attendant effects on the existing visitation schedule. That conflicts with § 452.377, as we interpret it, *supra*. As such, we must reverse the trial court's judgment modifying the primary physical custody of Junior.

### Conclusion

The circuit court's judgment denying the appellant's relocation to South Carolina with the parties' minor child, Russell L. Jarred, Jr., and modifying his primary physical custody is reversed and the case remanded to the court with directions to conduct a hearing considering the directives of § 452.377.10, in accordance with this opinion, and enter its judgment in accordance therewith.

HOWARD, P.J., and NEWTON, J., concur.