Ricky L. CUTTING, Respondent,

v.

Michel R. CUTTING, Appellant.

No. WD 58346.

Missouri Court of Appeals,
Western District.

March 13, 2001.

R. Gregory Harrison, Liberty, MO, Attorney for Respondent.

Peter M. Schloss, Liberty, MO, Attorney for Appellant.

Before BRECKENRIDGE, P.J., and ULRICH and HOWARD, JJ.

HOWARD, Judge.

Michel R. Cutting appeals from the trial court's judgment of dissolution of marriage. She contends that the trial court erred in awarding respondent primary physical custody of the parties' two children and in failing to appoint, *sua sponte*, a guardian *ad litem* to represent the children.

We affirm.

## Background

Appellant (mother) and respondent (father) were married in 1991. They subsequently had two children, D.T.C., born February 7, 1994, and A.L.C., born November 3, 1995. The parties separated on April 1, 1999. Father then filed a petition for dissolution of marriage on April 9, 1999. Mother answered and counter-petitioned. Both petitions set forth that the minor children were residing at the Salvation Army Children's Shelter and were in the actual custody of the Division of Family Services ("DFS") at the time of filing. Mother further disclosed that the children were under the jurisdiction of the Clay County Juvenile Court and referenced the corresponding case numbers. Neither party set forth in their pleadings the reasons for their children's residential placement.

The two-day trial on the dissolution commenced on January 12, 2000, and concluded January 21, 2000. The trial judge entered a temporary custody order on February 2, 2000, in which he granted father temporary custody and mother visitation to be supervised by the Juvenile Officer or his designee. On February 8, 2000, the final judgment of dissolution of marriage was entered. As the judgment related to custody of the parties' children, the trial court designated mother and father to be joint legal custodians with father as the primary physical custodian subject to mother's specific visitation on alternating weekends, a schedule of holiday visitation, and six weeks during the summer months.

Mother now brings two points on appeal. First, she contends that the trial court erred in awarding father primary physical custody (A) because he failed to file a proposed parenting plan as required by § 452.310.7,[1] and (B) because application of the guidelines set forth in § 452.375.2 indicated that mother was the most appropriate person to be the primary physical custodian of the children. Sec-

1. All statutory references are to RSMo Cum. Supp.1999.

ond, she contends that the trial court erred in not appointing a guardian *ad litem* under § 452.423.1.

We affirm the trial court's judgment.

## Point I: Primary Physical Custody of the Children

■ Unless we find that no substantial evidence supports the trial court's judgment, that it is against the weight of the evidence, or that it erroneously declares or applies the law, we will affirm an award of child custody. *Chapin v. Chapin*, 985 S.W.2d 897, 900 (Mo.App. W.D.1999). We review the evidence in a light most favorable to the judgment, deferring to the trial court's broad discretion in child custody matters. *Id.* This is because the trial court is in the "better position to judge the credibility of the witnesses as well as their sincerity, character, and other trial intangibles which might not be completely revealed by the record." *Hollins v. Hollins*, 13 S.W.3d 669, 673 (Mo.App. E.D.2000). Thus, unless we are firmly convinced that the welfare and best interests of the children require otherwise, we will affirm the judgment. *Chapin*, 985 S.W.2d at 900.

### A. Parenting Plan:

■ In setting forth the requirements of a parenting plan, § 452.310.7 states:

The petitioner and respondent shall submit a proposed parenting plan, either individually or jointly, within thirty days after service of process or the filing of the entry of appearance, whichever event first occurs of ... a petition involving custody or visitation issues. The proposed parenting plan shall set forth the arrangements that the party believes to be in the best interest of the minor children and shall include but not be limited to:

(1) A specific written schedule detailing the custody, visitation and residential time for each child with each party including: [nine specific holidays/times];

(2) A specific written plan regarding legal custody which details how the decision-making rights and responsibilities will be shared between the parties including [seven specific rights and responsibilities]; [and]

(3) How the expenses of the child, including child care, educational and extraordinary expenses as defined in the child support guidelines established by the supreme court, will be paid including: [six specific child care and support expenses].

Mother argues that father never submitted such a plan, so "the only pleading before the Court which supported a request for primary physical custody was the pleading filed by Mother." Thus, she claims that she is the only one who preserved the request for custody in her pleading.

In considering mother's argument, we consult § 452.375.9, which provides as follows:

Any judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of section 452.310. Such plan *may* be a parenting plan submitted by the parties pursuant to section 452.310 *or, in the absence thereof*, a plan determined by the court, but in all cases, the custody plan approved and ordered by the court *shall be in the court's discretion and shall be in the best interest of the child.*

(Emphasis added.) Of course, § 452.375.9 requires a parenting plan from the parties, either individually or jointly, and this obligation is enforceable by the court. However, the "shall" language in § 452.310.7 regarding the filing of parenting plans *does not per se preclude a trial court from awarding custody to a parent because of his or her failure to file a parenting plan.* Whether or not appropriate plans are filed by one or both parties, the final plan ordered by the court "shall be in the court's discretion and shall be in the best interest

of the child."[2] § 452.375.9. The legislature has not tied the court's hands so as to prevent awarding custody to a party who had not filed a plan.

We hold that the trial court did not clearly err in awarding primary physical custody to father simply because father did not file a written parenting plan.

## B. Award of Physical Custody to Father:

Our standard of review requires this court to review the evidence in a light most favorable to the award of primary physical custody to father.[3] Mother makes several arguments as to why the evidence points to factors which "appear[ ] to favor a placement of custody with Mother." Her contentions concern issues of mother and father's credibility, primarily pointing to their conflicting testimony on custody matters. However, we defer to the trial court on matters of witness credibility, and it is free to believe or disbelieve all or none of mother's and father's testimony. *Pearson v. Pearson,* 22 S.W.3d 734, 736 (Mo.App. W.D.2000). When conflicting evidence exists, we defer to the trial court's assessment of the evidence. *Green v. Green,* 26 S.W.3d 325, 327 (Mo. App. E.D.2000).

Upon review of the record on appeal, we find that the trial court received sufficient evidence to support its award of primary physical custody to father. For example, the parties separated after a police raid of their house (based on suspicion of methamphetamines being manufactured on the premises) resulted in criminal charges being brought against both of them. Mother's statements to the police indicated that she purchased many of the products used to make the meth and hid them from father. Mother was terminated from her job at the U.S. Postal Service for misappropriation of funds. Mother had been convicted of shoplifting on at least two occasions and had an outstanding warrant for a probation violation in Overland Park, Kansas, at the time of trial. Mother's behavior indicated a possibility that she would take the children and run. Again, where conflicting evidence exists, we defer to the trial court, unless we are firmly convinced that the welfare and best interests of the children require otherwise. *Chapin,* 985 S.W.2d at 900.

In conclusion, substantial evidence supports the trial court's judgment as it relates to custody of the children, it is not against the weight of the evidence, and the trial court did not erroneously declare or apply the law. *Id.* Thus, the trial court did not err in granting father primary physical custody of the children.

Point I is denied.

### Point II: Failure to Appoint Guardian *Ad Litem*

In her second point on appeal, mother argues that the trial court was mandated to appoint a guardian *ad litem* ("GAL") to represent the children's interests in the proceedings.

The relevant statute is § 452.423.1, which reads in pertinent part as follows:

> In all proceedings for child custody or for dissolution of marriage or legal separation where custody, visitation, or support of a child is a contested issue, the court may appoint a guardian ad litem. *The court shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged.*

(Emphasis added.) In this case, neither party specifically alleged neglect or abuse

2. Mother does not challenge the trial court's parenting plan set forth in its order as not being in accordance with §§ 452.375.6 and 452.375.9.

3. In determining the facts and circumstances surrounding the events leading to the dissolution proceeding, this court will only consider the evidence that is a part of the record on appeal. *Wofford v. Wofford,* 991 S.W.2d 194, 196 (Mo.App. W.D.1999) ("We cannot review issues never offered in evidence nor included in the transcript on appeal.").

of the children, nor did either party request the appointment of a GAL. Mother now argues, however, that the court should have been sufficiently alerted that there were specific allegations of abuse and neglect, and thus it should have appointed, *sua sponte*, a GAL. She bases her claim on the fact the pleadings disclosed that the children were living in the custody of DFS, and the court was on notice that the children were under the jurisdiction of the Clay County Juvenile Court pursuant to a letter from the Juvenile Officer dated January 5, 2000.

Both parties rely on the case of *Rombach v. Rombach,* 867 S.W.2d 500 (Mo. banc 1993). The issue in that case was "whether the mandatory appointment provision of § 452.423.1 is triggered by the introduction of evidence at trial, absent express allegations of child abuse or neglect in the pleadings." *Id.* at 502. The Missouri Supreme Court concluded, upon plain error review, that:

> [T]he mandatory appointment of a guardian ad litem pursuant to § 452.423.1 is triggered only by an allegation of child abuse expressly stated in a pleading and not by the mere introduction of evidence at trial.... [However,] [i]n matters involving the possible abuse or neglect of children, the attention of the trial court must be intensely directed to their protection. If sufficient evidence exists that, if believed, shows actual abuse or neglect occurred, the court, either upon motion of a party or *sua sponte*, should order the pleadings amended to conform to the evidence and appoint a guardian ad litem.

*Id.* at 503–04.

Mother contends on appeal that the parties were protecting themselves in not setting forth in more detail the reasons for the removal of the children from their custody, because the removal stemmed from an incident at the home which led to the arrest of both parents on criminal charges. However, she claims that it should have been enough that the pleadings showed that they did not have custody of their children at the time of the filing of the petition. She claims that such circumstances fit within the exceptional circumstances as anticipated in *Rombach* and required mandatory appointment of a GAL despite lack of specific pleadings of abuse or neglect.

In this case, the parties presented no evidence at trial that abuse or neglect of the children had in fact occurred. In fact, mother points out in her brief that the pleadings were silent as to the particular reason the children were not residing with them. She states, "[t]he record in this case is remarkable for its lack of detail with regard to the underlying allegations pertaining to those felony charges [then pending against the parties and allegedly leading to the juvenile officer's assumption of jurisdiction over them]."

Upon review of the record on appeal, we hold that the trial court did not err in failing to appoint, *sua sponte*, a GAL. The evidence in this case failed to show alleged abuse or neglect rising to the level of that set forth in *Rombach,* 867 S.W.2d at 502 (evidence showed that father used profanity in arguing with mother; he called his daughter "little fat pig"; he threw water on one child after a temper tantrum; he grabbed, pushed, shoved, and aimed a car at one son, etc.) or in *Holmes v. Holmes,* 878 S.W.2d 906, 911–12 (Mo.App. E.D. 1994) (father pushed son down stairs when attacking mother; daughter was hit in the head with the door while father chased her during an argument; father hit daughter with a belt one time, etc.). Yet, in both cases, the court found that the evidence did not rise to the level necessitating the *sua sponte* appointment of a GAL. *Rombach,* 867 S.W.2d at 502; *Holmes,* 878 S.W.2d at 912.

Mother relies on *Manns v. Chapman,* 990 S.W.2d 102 (Mo.App. W.D.1999). In *Manns,* this court found that the evidence was sufficient to raise the issue of whether child had been abused by father, as required for appointment of a GAL. For

example, the evidence showed that the child had bruises on him, and a DFS worker testified that there was probable cause the child had been abused. *Id.* at 107. In this case, however, neither party presented factual evidence of any physical abuse to the children that would trigger the *sua sponte* appointment of a GAL.

Moreover, abuse and neglect are not the only bases upon which a juvenile officer assumes jurisdiction over a child. *See* § 211.031 (listing matters in which the juvenile court obtains jurisdiction over children). The fact that the children were under the jurisdiction of the juvenile court is not decisive, nor does it necessarily "raise a red flag" of abuse or neglect. In this case, on January 5, 2000, Alan M. Gemli, Clay County Juvenile Officer, sent a letter to the trial judge which read as follows:

[Mother and Father] have two children, [D.T.C. and A.L.C.,] who are currently under the jurisdiction of the Clay County Circuit Court, Family Court Division. The children were made wards of the Court on April 29, 1999, and were placed in the care and custody of the Division of Family Services for placement at the home of a paternal great uncle and aunt. On November 3, 1999, a Motion to Modify Previous Order of Disposition was entered placing the children at the homes of the mother and of the father, (approximately 50% at each parent's home) still under the care and custody of the Division of Family Services.

On October 7, 1999, through mediation, the parents were able to reach a final resolution as to the temporary custodial arrangements of the children. This plan seems to be working and *we have no concerns for the safety of the children with either parent.* In [this cause], if an order of custody be entered, and upon receipt of that order, we will request

termination of our jurisdiction. This plan has been discussed with the Division of Family Services who are also in agreement with it.

(Emphasis added.) At the commencement of the trial, the trial court acknowledged receipt of this letter when it stated on the record:

I know that the children are and have been within the jurisdiction of the Juvenile Court. But I've been advised by the Juvenile Officer that they're ready, willing, and able to terminate the jurisdiction but they want this court to go ahead and conduct its hearing and make a determination of where the children will go after the termination of the Juvenile jurisdiction.

Counsel for both parties acknowledged the court's statement as being their understanding of the letter and situation surrounding the custody of the children as well. Neither party mentioned the necessity of a guardian *ad litem* at that time.

Although mother asserts that the Juvenile Officer's letter evinces the level of alleged abuse and neglect necessary to trigger the requirement of a *sua sponte* appointment of a GAL, we view the letter differently. In fact, the letter advised the court that there were no concerns with abuse or neglect of the parties' children. Thus, in the absence of an express allegation of abuse or neglect, there was no requirement for the *sua sponte* appointment of a GAL.

Finally, mother argues that "it is noteworthy that if either parent pleads guilty or is found guilty of [the offenses that they were then charged with under § 568.045] then the Court would lack jurisdiction to place the children in the custody of that parent" under § 452.375.3.[4] Section 452.375.3 applies only "if such parent *has been found guilty of, or pled guilty to, a*

**4.** Section 452.375.3 states:
The court shall not award custody of a child to a parent if such parent has been found guilty of, or pled guilty to, a felony violation of chapter 566, RSMo, when the child was the victim, or a violation of chapter 568, RSMo, except for section 568.040, RSMo, when the child was the victim.

felony violation of ... *chapter 568 RSMo* ... *when the child was the victim.*" (Emphasis added.) At the time of trial, both parties testified that they each had two counts of endangering the welfare of a child, one count of maintaining a public nuisance and one count of manufacture or possession of a controlled substance, methamphetamine, *pending* against them at the time of the trial. Father testified that he had worked out a plea agreement and was *going to* plead guilty to maintaining a public nuisance. Mother testified only that her attorney had indicated that there was evidence against her, and she would be following the advice of her attorney. The evidence did not show that either party had pled to or been convicted of any of the pending charges. Thus, § 452.375.3 was not applicable at the time the custody award was entered.

We hold that because there were no express allegations of abuse or neglect by either party in their pleadings, and the evidence at trial was insufficient to warrant *sua sponte* appointment of a GAL, the trial court did not err in not appointing a GAL.

Point II is denied.

### Conclusion

The trial court's award of primary physical custody to father was not in error. Nor was the trial court's failure to appoint a GAL in error. Thus, we affirm the trial court's judgment.

BRECKENRIDGE, P.J., and ULRICH, J., concur.