Stacy Joseph BELL, Appellant,

v.

Lori Annette BELL, Respondent.

No. WD 61745.

Missouri Court of Appeals, Western District.

Jan. 27, 2004.

William Edgar Shull, Jr., Liberty, for Appellant.

Michael Walter Lucansky, Overland Park, KS, for Respondent.

RONALD R. HOLLIGER, Judge.

Stacy Bell ("Father") appeals from a judgment modifying the parenting time provisions and a portion of the parenting plan established in the original joint physical custody decree that dissolved his marriage to Lori Bell ("Mother"). Specifically, he contends that the trial court erred in granting Mother extensive summer custody time [1] because the modification was not in the child's best interests as required by section 452.410.1, RSMo 2000,[2] and unfairly restricted his access to the child in violation of section 452.400.2. Secondly, he contends that the trial court's removal of a restriction in the original decree that prevented Mother from obtaining medical care for the child without Father's approval was not in the child's best interests and was not accompanied by a change in circumstances. Finally, he claims there was no factual or legal basis for the court's rebuttal of the presumed child support amount in Form 14.

We affirm.

## Facts and Procedural History

The Bells' marriage was dissolved on December 7, 1999. They have one minor child named Katelyn. The Judgment and Decree of Dissolution of Marriage granted joint legal and joint physical custody of Katelyn to Mother and Father with Father having the majority of time with Katelyn.[3]

---

1. The modified judgment refers to the time Katelyn spends with Mother as "visitation." Because, by definition, a joint physical custodian does not have "visitation," however, we will refer to the time Katelyn spends with Mother and Father as "custody time." *See* § 452.375.1(3); *Loumiet v. Loumiet,* 103 S.W.3d 332, 337–38 (Mo.App.2003).

2. All statutory citations are to RSMo 2000, unless otherwise indicated.

3. Confusingly, courts have often used the term "primary physical custodian" to refer to both a sole physical custodian and a joint physical custodian who has more custody time than the other custodial parent. *Loumiet,* 103 S.W.3d at 337–38. For sake of clarity, we will not use the term in this opinion.

More particularly, the terms of the original judgment were: (1) Mother had Katelyn after school one weekday and from Friday to Sunday every other weekend; (2) during the summer, Mother had three, two-week custody periods; (3) holiday custody covering Christmas, Thanksgiving, Mother's Day, Father's Day and New Year's Day was set out on a rotating basis; (4) Father was given the sole responsibility for taking Katelyn to doctor's visits except in the case of an emergency; (5) Mother was ordered to pay $160 a month in child support; and (6) Mother was given responsibility for providing Katelyn's clothes while in Mother's care.

Mother and Father have not gotten along since entry of the original judgment. Mother reported that Father kept Katelyn on several weekends that were designated for Mother's custody time, refused to allow her to talk to Katelyn on the phone, hung up the phone in the middle of conversations, and failed to confer with her about Katelyn's health as required by the joint legal custody award. Father reported that Mother failed to pay child support, called his home late at night, and left inappropriate and harassing phone messages.

On January 29, 2001, Father filed a motion to modify the original judgment seeking sole physical custody of Katelyn and an increase in Mother's child support obligation. He also filed a motion for contempt alleging that Mother had violated the terms of the original judgment by failing to pay child support and failing to return certain items of personal property.

Soon thereafter, on March 2, 2001, Mother filed a motion to modify the original judgment seeking a change in custody and/or visitation. She also filed a motion for contempt alleging that Father intentionally interfered with her "visitation" rights under the original judgment by purposefully keeping Katelyn on several weekends designated for Mother's custody time.

The trial court entered a Judgment of Modification on March 13, 2002, that altered the original judgment by: (1) increasing Mother's child support obligation to $235.00 per month; (2) terminating Mother's weekday custody time; (3) awarding Mother overnight custody time every other weekend; (4) awarding Mother summer custody time for the entire summer except for a two-week period in July; (5) providing for telephone contact between Mother and Katelyn two or three days a week for fifteen minutes; (6) adding Memorial Day weekend and Labor Day weekend to the holiday schedule on a rotating basis; and (7) requiring Father to supply Mother with the names of Katelyn's healthcare providers so that Mother can obtain healthcare for Katelyn while she is in Mother's care. The modified judgment also provided that all other unaffected portions of the original decree would remain in force.

## Standard of Review

We will affirm a trial court's decision modifying a dissolution decree unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Smith v. Smith,* 75 S.W.3d 815, 819 (Mo. App.2002) (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). In reviewing the trial court's decision, we view the evidence in the light most favorable to the award. *Id.*

## Discussion

*Did the trial court err in modifying Mother's custody time because the modification was not in the child's best interests?*

At the outset, we find it necessary to clearly state that our factual description of

the custodial arrangement and parenting time provisions in both the original decree and the modified judgment is not meant to imply approval of the use of terms like "visitation" and "primary physical custody" when discussing joint physical custody arrangements. Neither is our description meant to indicate that we believe the original division of parenting time in this case met any realistic standard for application of the term "joint physical custody."

Father argues that the change in summer custody time was not in the child's best interests. The Point Relied On, however, fails to set out whether Father specifically claims that the finding was not supported by the evidence, it erroneously declared or applied the law, or it was against the weight of the evidence. *See Crowley v. Crowley*, 878 S.W.2d 70, 72 (Mo.App.1994). Although the Point Relied On is technically deficient for failure to comply with the Rule 84.04(d)(1)(b) requirement that the legal reason for any claimed error be clearly stated, we believe we can discern his argument, as Mother was apparently able to do.

█ Father argues that the modification does not serve Katelyn's best interests as required by section 452.410.1[4] and that, even if it does serve her best interests, the trial court erred by not stating how it does so. Admittedly, nowhere in the Judgment of Modification does the trial court state that the changes in custody time are in Katelyn's best interests even though it does state that a change in circumstances occurred. Father points to no authority requiring the trial court to state how a modification of custody time serves a

child's best interests when, as here, no request for specific findings was made.

█ We will not overturn the trial court's decision unless Father proves the modification was not in Katelyn's best interests. *In re S.E.P. v. Petry*, 35 S.W.3d 862, 872 (Mo.App.2001). This is a heavy burden because "[t]he trial court is presumed to have acted in the best interests of the child, and we defer to the trial court's assessment of what serves the child's best interests unless we are firmly convinced that the child's welfare requires some other disposition." *Smith*, 75 S.W.3d at 820 (citing *In re S.E.P.*, 35 S.W.3d at 867).

Father argues that the trial court's decision to grant Mother custody time during all but two weeks of the summer is not in Katelyn's best interests because she is not being adequately exposed to both parents during that time. Although no explicit statement was made in the Judgment of Modification, the record reflects that the trial court granted mother longer periods of custody time because the parents could not get along. The trial court terminated Mother's mid-week custody time and granted her more time during the summer so that the parents would not have as much contact with each other.

█ The factors found in section 452.375.2 may be considered in determining whether changes should be made in visitation or custody time. *Keith v. Keith*, 708 S.W.2d 350, 352 (Mo.App.1986). The second factor provides that a court can consider "[t]he needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability

---

4. The Western District has not yet decided whether the standard found in section 452.410.1 or the standard found in section 452.400.2 applies to the modification of custody time between two joint physical custodians. Because Father does not challenge the trial court's finding that a change in circumstances occurred, however, we only need to decide whether the modification was in the child's best interests under either statute. We need not, then, decide the issue here.

and willingness of parents to actively perform their functions as mother and father for the needs of the child." § 452.375.2(2). Sufficient evidence was presented for the trial court to conclude that Katelyn's relationship with both of her parents would be more meaningful if they got along better. The trial court's decision to modify the custody schedule so that the parents have less contact with one another is certainly one way to reduce the conflict between them.

■ In Father's second subargument he contends that the modification unfairly restricts his "visitation" in violation of section 452.400.2, which states, "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development." Father argues that the modification restricts his "visitation" because it only allows him to have Katelyn two weeks out of the summer and does not provide for telephone contact between him and Katelyn while she is in Mother's care. This argument ignores the distinction between physical custody and visitation. As a joint physical custodian, Father does not have "visitation," which is provided only to non-custodial parents under the express terms of section 452.400.1.

Moreover, even if we were to apply section 452.400.2 to this modification of custody time, we would not consider it such a significant change in Father's time with the child as to constitute a "restriction" requiring the additional statutory findings. *Searcy v. Searcy,* 85 S.W.3d 95, 103 (Mo. App.2002). Although Father had less summer time with the child after the modification, this loss was balanced by the termination of Mother's weekday time during

the school year. Nor were there any boundaries, limitations, or conditions placed on the exercise or manner of exercise of his time with the child. *See Turley v. Turley,* 5 S.W.3d 162, 165 (Mo. banc 1999); *Barancik v. Meade,* 106 S.W.3d 582, 590 (Mo.App.2003).

Point denied.

### Did the trial court err in modifying the dissolution decree to allow Mother to obtain routine medical care for Katelyn while she is in Mother's care?

■ Father asserts that the trial court erred in modifying the provision of the original judgment that prohibited Mother from obtaining medical care for Katelyn except in an emergency. He argues that the modification was error because it was not shown to be in the best interests of the child and there was no evidence that a change in circumstance had occurred since entry of the original judgment.

Mother and Father were granted joint legal custody in both the original judgment and the modified judgment. " 'Joint legal custody' means that the parents share the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority." § 452.375.1(2). The provision prohibiting Mother from obtaining routine medical care for Katelyn fell under the exception to the "joint legal custody" definition that allows a trial court to "apportion" certain health-care responsibilities. As such, it was part of the parenting plan required by section 452.375.9.

Section 452.375.9 states:

Any judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified

in subsection 7 of section 452.310. Such plan may be a parenting plan submitted by the parties pursuant to section 452.310 or, in the absence thereof, a plan determined by the court, but in all cases, the custody plan approved and ordered by the court shall be in the court's discretion and *shall be in the best interest of the child.*

(emphasis added). Section 452.310.7(2)(b) states that one of the parenting plan's required terms must touch on "[m]edical, dental and health care decisions including how health care providers will be selected and a method of communicating medical conditions of the child and how emergency care will be handled[.]"

Father argues that the trial court's decision to modify the provision prohibiting Mother from obtaining routine medical care for Katelyn was error because there was no evidence that the modification was in Katelyn's best interests or that a change in circumstances had occurred as required by section 452.410.1. As is clear from the text of section 452.375.9 quoted above, however, this portion of the trial court's modification only had to be in Katelyn's best interests. Mother was not required to prove that a change in circumstances occurred because the requested modification concerned the terms and nature of the parenting plan under the joint legal custody decree. It did not concern a change in legal custody itself.

 The trial court is presumed to have acted in the child's best interests. *Smith,* 75 S.W.3d at 820. We will find otherwise only if "we are firmly convinced that the child's welfare requires some other disposition." *Id.* In this case, we cannot say the trial court's decision was against the weight of the evidence. Katelyn will be spending up to six weeks at a time with Mother due to the modification of custody time. The trial court certainly could have

found that it was in Katelyn's best interest that Mother be able to obtain routine medical care for her in light of the fact she will be spending longer periods of time with Mother. Additionally, evidence was adduced at trial that Father failed to keep Mother informed about Katelyn's health. The trial court could also have concluded, then, that it was necessary to allow Mother to obtain routine medical care for Katelyn to ensure that both parents were informed about her health.

Point denied.

### Did the trial court err in rebutting the presumed validity of the Form 14 calculation as to child support?

 Father's third and final challenge to the trial court's judgment is that the trial court erred in rebutting the presumed validity of the Form 14 calculation. Father submitted a Form 14 that showed a presumed child support amount of $498.00. Mother's Form 14 showed a presumed child support amount of $407.00. The trial court rejected both of these forms and calculated its own Form 14, which showed the presumed child support amount to be $421.00. The trial court found this amount to be unjust and inappropriate and reduced Mother's child support obligation to $235.00 per month. Because neither party requested findings of fact or conclusions of law as allowed by Rule 88.01, the judgment does not state why the trial court found the presumed child support amount to be unjust and inappropriate. The record does indicate, however, that the rebuttal was based on the custodial arrangement.

 Mother responds to Father's argument on this point by stating that the trial court's rebuttal of the presumed child support amount was not in error because the trial court specifically decided not to abate her child support obligation during the summer when Katelyn would be in

Mother's custody for extended periods of time. In support of her argument, Mother points us to section 452.340.2. This provision, however, is not applicable to Mother's situation. Section 452.340.2 provides:

> The obligation of the parent ordered to make support payments shall abate, in whole or in part, for such periods of time in excess of thirty consecutive days that the other parent has voluntarily relinquished physical custody of a child to the parent ordered to pay child support, *notwithstanding any periods of visitation or temporary physical and legal or physical or legal custody pursuant to a judgment of dissolution or legal separation or any modification thereof.*

(emphasis added). This provision does not apply to court-ordered visitation or temporary custody. *In re Marriage of Gerhard,* 985 S.W.2d 927, 932 (Mo.App.1999) (citing *Lenger v. Lenger,* 939 S.W.2d 11, 14 (Mo. App.1997)). It applies to a situation where one parent voluntarily relinquishes custody to the parent obligated to pay child support. *Id.* Mother's argument on this theory fails.

■ The Missouri Supreme Court established a two-step process for determining child support when it adopted Rule 88.01. *Schriner v. Edwards,* 69 S.W.3d 89, 92 (Mo.App.2002) (citing *Woolridge v. Woolridge,* 915 S.W.2d 372, 379 (Mo.App. 1996)). First, the court must " 'determine and find for the record the presumed correct child support amount pursuant to a correct Form 14 calculation.' " *Id.* at 92–93. Then, the court must " 'consider whether to rebut the presumed correct child support amount, as found by the court, as being unjust or inappropriate after consideration of all relevant factors.' " *Id.* at 93. Father argues here, that the rebuttal of the presumed child support amount was error because it was based on

excessive credit for Mother's overnight visitation.

In support of this argument, Father states that Form 14's line 11 is meant to compensate for the amount of time Katelyn spends with Mother. Essentially, Father argues that any reduction based on the custody arrangement in addition to that prescribed by line 11 constitutes excessive credit for overnight visitation. Line 11 is termed, "adjustment for a portion of the amounts expended during periods of overnight visitation or custody." The directions applicable to Form 14's line 11 state, "Enter the monthly amount of any adjustment to which the parent obligated to pay support is entitled for a portion of the amounts expended on the children who are the subject of this proceeding during that parent's periods of overnight visitation or custody." The appropriate monthly adjustment is based on a percentage of the support obligation owed by the parent paying support. The more time the parent paying support spends with the child, the higher the applicable percentage.

■ The trial court applied a ten-percent reduction to Mother's support obligation based on the amount of time she spends with Katelyn. Father agrees that the trial court applied the correct percentage reduction, but he argues that the trial court's decision to rebut and reduce the resulting presumed child support amount based on the custodial arrangement was error. Again, the trial court was not required to specifically state the factors it relied on in deciding to rebut the presumed child support amount. *In re Marriage of Gerhard,* 985 S.W.2d at 931 (citing *Scoggins v. Timmerman,* 886 S.W.2d 135, 139 (Mo.App.1994)). Such factors, however, "must be apparent from the record." *Id.* Further analysis of Form 14's di-

rections and guidelines reveals that the trial court did not err.

First, Form 14's line 6(b) allows the trial court to include reasonable work-related child care costs of the parent obligated to pay support in calculating the presumed child support amount. As the directions to line 6b state, inclusion of this amount is preferable but not required. DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14, Line 6b, Comment A. Here, the trial court chose not to include this amount in its Form 14. No provision in the original judgment required Mother to pay child-care costs, but in the Judgment of Modification, the trial court provided, "Each parent shall decide all routine and minor matters concerning the child's welfare occurring while in that parent's custody." Due to Mother's work schedule, this will certainly include work-related childcare during summer custody time. As a relevant factor in deciding whether to rebut the presumed child support amount, the trial court could properly have based part of the reduction on Mother's work-related child-care costs.

Second, Mother is responsible for providing Katelyn's clothing to be worn while she is in Mother's care. The original judgment included this provision, and it was not altered in the Judgment of Modification. As such, it remains in full force and effect according to the modified judgment. In addition, it is clear from the Assumptions portion of the Form 14 guidelines that clothing costs are not considered in the line 11 adjustment. *Id.* at Assumptions (12). This portion of the guidelines states that the line 11 adjustment standards assume the parent paying support will incur "no significant non-duplicated fixed expenditures for the children." *Id.* at Assumptions (12)(4). One example of a non-duplicated fixed expenditure is clothing. *Id.* at Assumptions (12). Mother tes-tified that she spent approximately $100.00 to $150.00 per month on Katelyn's clothes. This, then, could have been another relevant factor the trial court relied upon in rebutting and reducing the presumed child support amount.

We cannot say the trial court's decision to rebut and reduce the presumed child support amount was unsupported by substantial evidence or was the result of a misapplication of law.

Point denied.

The judgment is affirmed.

PAUL M. SPINDEN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.