Robin MELTON, Respondent,

v.

Catherine COLLINS, et al., Appellant.

No. 25340.

Missouri Court of Appeals,
Southern District,
Division I.

May 20, 2004.

Elizabeth H. Chastain, Wilson & Chastain, L.C., Cape Girardeau, MO, for Appellant.

Lew Polivick, Legal Services Of Southern Missouri, Charleston, MO, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Catherine Collins ("Mother") appeals from the judgment of the Circuit Court of Stoddard County modifying the court's judgment of custody by changing the primary physical custody of her son, Ethan Cole Melton, from her to his father, Respondent Robin Melton ("Father").

Father and Mother have one minor child together, Ethan, born November 12, 1992. The parties were never married, but they lived together for a period of time after Ethan was born. On September 21, 1998, the Circuit Court of Stoddard County entered a paternity judgment establishing that a father-child relationship existed between Father and Ethan and granting Mother and Father joint legal custody of Ethan. Mother was accorded the primary physical custody of Ethan. The judgment also provided that Father have periods of visitation with Ethan, pay Mother $400 per month in child support, and maintain certain health insurance for Ethan.

In February 2001, Mother decided to remove Ethan from the Puxico Public Schools because she did not feel it was in his best interest to attend school there; however, she never discussed this decision with Father. At this time, Mother also made plans to relocate to Cape Girardeau, approximately 50 miles from Puxico. Mother sent Father a certified letter dated February 16, 2001, informing him that she and Ethan were *already* living in Cape Girardeau. The letter read, in pertinent part:

> This is to inform you that Ethan Melton, and I Cathy Collins, are currently residing in Cape Girardeau Mo
>
> You may pick up Ethan at the following address
>
> 1514 Scott St.
>
> Cape Girardeau
>
> Visitation will be exercised as stated in the Robin Melton v. Cathy Collins settlement agreement case # CV498-75R as follows
>
> Weekend—Every other weekend
>
> Weekday—If the parents lives in the same county, one evening each week from 6:00 pm on Wednesday until 6:00 pm on Thursday.
>
> /s/ Cathy Collins

(All errors in original.) Despite the contents of the foregoing letter, Mother continued to maintain her apartment in Puxico. Mother admitted at trial that she moved back to Puxico no later than June 2001 and remained there until August 2001.

Shortly after sending the letter, Mother commenced to home school Ethan. She filed her declaration of withdrawal of Ethan with the Puxico Public Schools by letter dated February 20, 2001. She also filed a declaration of home schooling, dated February 21, 2001, with the Stoddard County Recorder of Deeds Office, all pursuant to section 167.042.[1] The Juvenile Office re-

---

1. Statutory references are to RSMo 2000, unless otherwise set out.

ceived a copy of the declaration of home schooling on February 23, 2001.

Then, on August 29, 2001, Mother sent Father another certified letter, which read:

This is to inform you, Ethan is living in Cape Girardeau

Our temporary address is

1514 Scott St.

Cape Girardeau MO

63701

You may pick him up for visitation at the address above You will be informed of our perminit address as soon as possible

/s/ Cathy Collins

(All errors in original.) When this letter was sent, Mother had completely moved out of her apartment in Puxico and was living with her mother in Cape Girardeau. Mother continued home schooling Ethan.

On December 11, 2001, Father filed a motion to modify custody and requested that he be awarded primary physical custody of Ethan. Mother filed a motion to dismiss and a motion for contempt for Father's failure to maintain health insurance for Ethan and failure to pay child support. On its own motion, the trial court appointed a guardian ad litem.

The trial court entered a final "Judgment of Modification" on November 19, 2002, having made extensive findings of facts and conclusions of law. The trial court found, *inter alia,* that Mother had failed to provide Father with the notice required by section 452.377.2 prior to her relocation to Cape Girardeau. The trial court further found that Mother's conduct regarding the unauthorized relocation was "irresponsible parenting, unfair to [Father]," and in violation of the statute.

The trial court also found that, while a parent has a statutory right to home school a child, Mother's "past actions fully

disregard[ed] and circumvent[ed] [Father's] rights ... to participate in education decisions regarding the minor child." Specifically, the trial court found that Mother "in no way attempted to discuss the home schooling of Ethan with [Father] prior to beginning same and has failed to keep [Father] updated on Ethan's educational status or progress."

Finding there had been "substantial and continuing changes in the circumstances of Ethan and [Mother] since the entry of the [paternity judgment]," the trial court concluded the best interests of Ethan required a modification of that judgment. The trial court denied Mother's motion for contempt, finding that Father had been laid off from his job and was unable to pay the full child support amount, but found Father liable for the child support arrearage. The trial court also awarded Father and Mother joint physical and legal custody of Ethan, gave primary physical custody to Father, and granted periods of custody and visitation to Mother. This appeal followed.

Mother's first point on appeal alleges the trial court erred in finding that Mother's relocation was unauthorized and was not in the best interests of Ethan. She maintains that because she complied with the provisions of non-court-ordered relocation, pursuant to section 452.377, her relocation could not have constituted a substantial change in circumstances justifying a modification of the paternity judgment.

In her second point, Mother avers the trial court erred in entering a judgment of modification of custody when it changed the primary custody of Ethan from Mother to Father. She maintains the trial court's determination was not supported by substantial evidence and was based on an erroneous declaration and application of the law. She asserts that under section 452.377 she was permitted to relocate to

Cape Girardeau and that her home schooling of Ethan comported with the requirements of state law; hence, any disagreement as to home schooling did not require a change of custody to address the issue.[2] Because the points are interrelated, we will address the points together.

■ "Our review of a court-tried case involving matters of custody is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *Baxley v. Jarred*, 91 S.W.3d 192, 196 (Mo.App.2002). "We will affirm the judgment so long as it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Id.*

> In assessing the sufficiency of the evidence in a case modifying custody, the court of appeals will examine the evidence and its inferences in the light most favorable to the trial court's order, and defer to the trial court's assessment of the witnesses' credibility and accept the trial court's resolution of conflicting evidence, and presume that the trial court reviewed all of the evidence and based its decision on the child's best interest.

*Smith v. Smith*, 75 S.W.3d 815, 819 (Mo. App.2002); *see also* § 452.410.1. We presume the trial court acts in the best interests of the child. *In re S.E.P. v. Petry*, 35 S.W.3d 862, 867 (Mo.App.2001).

> To modify an award of custody, the court must find "upon the basis of facts that have arisen since the prior decree ... that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child."

*Love v. Love*, 75 S.W.3d 747, 762 (Mo.App. 2002) (alteration in original) (quoting § 452.410.1); *see also* § 452.410.1. "Thus, the court's determination is two-fold. It must first find that a substantial change of circumstances has occurred and, once it does, it must then find that the best interests of the child would be served by modifying custody." *Love*, 75 S.W.3d at 762. We recognize that, in matters of child custody, we are to pay deference to the trial court's discretion. *Cutting v. Cutting*, 39 S.W.3d 540, 542 (Mo.App.2001).

■ Mother maintains that she provided Father with the appropriate notices as required by section 452.377 and that Father's failure to file a timely objection resulted in a "permissible non-court-ordered relocation." Further, Mother argues that, as the relocation ultimately was not in violation of any statute, it could not constitute a substantial change in circumstances justifying a modification of custody.

"Section 452.377 governs the 'relocation of children' in this state." *Herigon v. Herigon*, 121 S.W.3d 562, 565 (Mo.App.2003). "Relocation" is defined as "a change in the principal residence of a child for a period of ninety days or more, but does not include a temporary absence from the principal residence." § 452.377.1. Section 452.377.2 requires a parent who desires to relocate to give written notice to the other parent of the proposed relocation. Additionally, section 452.377.2 mandates that the notice:

> [S]hall be given in writing by certified mail, return receipt requested, to any party with custody or visitation rights ... at least sixty days in advance of the proposed relocation [and] ... shall include the following information:

---

**2.** We note Mother challenges only the trial court's determination that a substantial change in circumstances existed sufficient to warrant a modification of the custody order.

She does not allege any error in the trial court's findings regarding the *best interest* of the child in modifying custody.

(1) The intended new residence, including the specific address and mailing address, if known, and if not known, the city;

(2) The home telephone number of the new residence, if known;

(3) The date of the intended move or proposed relocation;

(4) A brief statement of the specific reasons for the proposed relocation of a child, if applicable; and

(5) A proposal for a revised schedule of custody or visitation with the child, if applicable.

 If the non-relocating parent is given actual notice of the proposed relocation, the failure to strictly comply with the statutory provisions is not fatal to the relocation. *See Herigon,* 121 S.W.3d at 566–67; *Baxley,* 91 S.W.3d at 205. "However, to satisfy fully the notice requirements of § 452.377.2, other than the requirement that the notice be in writing by certified mail, the actual notice must also include the informational requirements of that subsection." *Herigon,* 121 S.W.3d at 565. The child's residence may be relocated sixty days after the required notice is provided unless, within thirty days of receiving the notice, the non-relocating parent files a motion seeking an order to prevent the relocation. § 452.377.7. This statutory scheme results in two types of relocations: (1) non-court-ordered relocation where the non-relocating parent does not object to relocation in a timely manner, as provided in section 452.377.7, and (2) court-ordered relocation where the non-relocating parent does object to relocation in a timely manner. *Baxley,* 91 S.W.3d at 199. When the non-relocating parent waives any objection to relocation by failing to object to the relocation in a timely manner, the relocating parent has an absolute right to relocate with the minor child, without the per-

mission of the court or the non-relocating parent. *Id.* at 204–06.

As previously set out, Mother argues she "sufficiently complied with the notice requirements of section 452.377," and therefore, Father had actual notice of the relocation based on the February 16, 2001, letter. Mother asserts that, because Father did not file a timely objection, she had an absolute right to relocate with Ethan. On the other hand, Father contends the February 16, 2001, letter "cannot be considered statutory notice of [Mother's] relocation," because the evidence did not show Mother *actually changed her residence* for a period of 90 days after the February 16, 2001, letter was sent.

As for the relocation notice provided by the August 29, 2001, letter, we observe that it provided Father with a "temporary" address in Cape Girardeau and advised Father he would be informed of the "perminit [sic] address as soon as possible." In this regard, Father argues the August 29, 2001, letter did not comply with the statutory requirements of section 452.377.2 due to its deficiency in including all of the statutorily required information.

In support of her argument, Mother cites to *Baxley,* 91 S.W.3d at 192 and *Weaver v. Kelling,* 53 S.W.3d 610 (Mo.App. 2001) for the proposition that strict compliance with the statute is not necessary when the non-relocating parent receives actual notice of a move. However, these cases are easily distinguishable from the instant case.

In *Baxley,* the court found that the letter from the relocating parent met "all of the requirements of § 452.377.2 concerning the relocation notice" except there was no evidence in the record that the letter was sent by certified mail, return receipt requested. *Baxley,* 91 S.W.3d at 205. The *Baxley* court concluded that when "the evidence is undisputed that actual

notice of the relocating parent's proposed relocation with the child was received by the nonrelocating parent *in a timely fashion,* the fact that the notice was not sent by certified mail does not invalidate the notice for purposes of § 452.377." *Id.* (emphasis added). Accordingly, because the father in *Baxley* did not file an objection to the proposed relocation, the mother "was free to relocate with the child *after sixty days had elapsed* from the time the [father] received the notice...." *Id.* at 206 (emphasis added). Similarly, the relocating parent in *Weaver* informed the nonrelocating parent of a potential move more than two months before the proposed relocation was to take place. *Weaver,* 53 S.W.3d at 616.

Viewed in the light most favorable to the trial court's ruling, as we must, the evidence supports a finding that the February 16, 2001, letter did not serve as actual notice of a "relocation." Father testified that after receiving the February 16, 2001, letter, Mother lived in Cape Girardeau "for about a month." Thus, the move was not a "relocation" under the definition provided in the statute in that it was not a change of primary residency for a period of ninety days. § 452.377.1.

Additionally, the August 29, 2001, letter set out only that Ethan was living in Cape Girardeau and provided a "temporary address." Father was informed he could pick Ethan up for visitation at that address and that he would be advised of their "perminit [sic] address as soon as possible." This letter also failed to include all of the information required by section 452.377.2, in that it did not provide the home telephone number, the date of the intended move or relocation, a brief statement of the specific reasons for the proposed relocation, or a proposal for a revised schedule of custody or visitation.

§ 452.377.2; *see also Herigon,* 121 S.W.3d at 565.

■ Just as significant, both letters were sent *after* Mother and Ethan had already moved to Cape Girardeau in each instance. Absent some exigent circumstance, the failure to provide proper notice of proposed relocation prior to moving thwarts the non-relocating parent's procedural rights to contest the move as guaranteed by section 452.377.7. *See In re Wright,* 129 S.W.3d 882, 885–86 (Mo.App. W.D. 2004). While Mother contends she "significantly complied" with the statutory provisions, such compliance is impossible when the notice was provided to Father *after* each relocation had occurred. *See Herigon,* 121 S.W.3d at 565–66. We also note that violations of section 452.377 "may be deemed a change of circumstance under section 452.410, allowing the court to modify the prior custody decree." § 452.377.12. Here, we cannot find the trial court erred in determining Mother failed to provide appropriate notice of Mother's relocation to Cape Girardeau to Father.

■ Mother also alleges the trial court's finding of substantial and continuing changes was improperly based on her home schooling of Ethan. While Mother contends the present case has "striking similarities" with *Sumnicht v. Sackman,* 906 S.W.2d 725 (Mo.App.1995), we fail to see any relevant similarities.

In *Sumnicht,* the father argued the change of custody ordered by the trial court should have been upheld because the mother was not "a healthy influence on the child" and he felt that the mother was not an adequate teacher for the child. *Id.* at 728. However, the appellate court found that the father's concerns about mother as a teacher did not qualify as a basis for a change in custody. *Id.*

While in the instant case Father testified as to his worries about Mother's ability to home school Ethan, those concerns were not the basis for the trial court's finding of a change in circumstances. Rather, the trial court found that Mother's "past actions fully disregard[ed] and circumvent[ed] [Father's] rights ... to participate in education decisions regarding [Ethan]" as granted in the paternity judgment, which gave the parties joint legal custody of Ethan. The court specifically found that Mother "in no way attempted to discuss the home schooling of Ethan with [Father] prior to beginning the same and has failed to keep [Father] updated on Ethan's educational status or progress."

It is our view that the present case is more similar to *Heslop v. Sanderson*, 123 S.W.3d 214 (Mo.App.2003) than *Sumnicht*.

In *Heslop*, the appellate court acknowledged the admonition of 452.375.2(8) relating to home schooling and observed that "it would have been error for the trial court here to have changed custody on the basis that the [mother] switched [the child] from public schooling to home schooling." *Heslop*, 123 S.W.3d at 223. However, the appellate court concluded the trial court clearly based its decision on the mother's failure "to obtain the consent of the [father], as agreed by the parties in their separation agreement and as ordered by the trial court in its prior order of custody" and not on the sole basis that the child had been home schooled. *Id.* Accordingly, the reviewing court determined that there could "be no dispute that the [mother] was in violation of the court's decree by choosing to home school [the child] without first obtaining the consent of the [father]." [3] *Id.*

In enacting section 452.377 the legislature sought "to insure that relocating parents and nonrelocating parents would be treated consistently, equally, and fairly, while protecting the best interests of the child." *Baxley*, 91 S.W.3d at 199. Here, there was sufficient evidence supporting the trial court's determination that Mother failed to provide Father with the required statutory notice of her relocation to Cape Girardeau. In failing to do so, Mother thwarted Ethan and Father's right to interact with each other, and Father was treated unfairly. Additionally, there was substantial evidence supporting the trial court's determination that Mother's unilateral decision to home school Ethan was without any input from Father and constituted irresponsible parenting. The trial court did not err in determining that these *combined* factors constituted substantial changes of circumstances relating to Ethan and Mother, thereby warranting a modification of custody. Points denied.

The judgment of the trial court is affirmed.

GARRISON, J., concurs.

RAHMEYER, C.J., concurs in separate opinion.

RAHMEYER, C.J., concurring.

I concur in the result as there was ample evidence that a modification in the custodial arrangements was warranted; however, I write separately to call attention to two matters. The first, and what appears to be a minor, point, is the trial court designation of "primary physical custody." At some point, the courts will have to directly address the issue as to what amount of parenting time qualifies as sole

---

**3.** The *Heslop* court was not required to decide whether this issue alone was enough to establish a substantial change of circumstances warranting modification of the custody provisions of the judgment, because of its holding on a separate point that the trial court erred in its determination regarding the child's best interest. *Id.*

physical custody and what amount qualifies as joint physical custody, if for no other reason than the difference in standards for modification of visitation versus modification of custody. In this case, although the court designated Father as the primary physical custodian, the court also granted legal and physical custody to both parents. Both parents were awarded significant periods of time with the child. § 452.375.1(3). Our recital in the principal opinion of the custodial designation does not indicate our approval of the designation of "primary physical custodian". *See Bell v. Bell*, 125 S.W.3d 899, 902 n. 3 (Mo.App. W.D.2004) ("Confusingly, courts have often used the term 'primary physical custodian' to refer to both a sole physical custodian and a joint physical custodian who has more custody time than the other custodial parent.")(internal citation omitted).

The second, and more important, matter concerns the imperative of complying with the statute as to the issue of notice. As set forth in the principal opinion, in this case, there was evidence that neither sufficient nor actual notice was given to Father; nevertheless, I write to set forth my disagreement with the line of cases cited in the principal opinion for the proposition that "actual notice" of a proposed relocation is sufficient to comply with Section 452.377.2. *See Herigon v. Herigon*, 121 S.W.3d 562, 566–67 (Mo.App. W.D.2003); *Baxley v. Jarred*, 91 S.W.3d 192, 205 (Mo. App. W.D.2002). I disagree with the *Baxley* court's disregard of the plain, clear language of Section 452.377.

The legislature set forth a specific procedure for a parent who seeks to relocate with a minor child. In pertinent part, Section 452.377.2 states: "Notice of a proposed relocation of the residence of the child, or any party entitled to custody or visitation of the child, shall be given in writing *by certified mail, return receipt requested,* to any party with custody or visitation rights." (emphasis added). The requirement that the notice be by certified mail is restated in Section 452.377.11:

> After August 28, 1998, every court order establishing or modifying custody or visitation shall include the following language: 'Absent exigent circumstances as determined by a court with jurisdiction, you, as a party to this action, are ordered to notify, in writing by *certified mail, return receipt requested,* and at least sixty days prior to the proposed relocation, each party to this action of any proposed relocation of the principal residence of the child, including the following information.' (emphasis added).

The language continues, "your failure to notify a party of a relocation of a child may be considered in a proceeding to modify custody or visitation with the child." § 452.377.11. Without citing to any authority, and with serious consequences to the parent who did not receive the authorized notice, the *Baxley* court waived the requirement that the notice be by certified mail. *Baxley*, 91 S.W.3d at 205. To compound the matter, after refusing to require the relocating parent to strictly comply with the statute, the *Baxley* court then inexplicitly required strict compliance by the non-relocating parent in the filing of an objection within thirty days of receiving notice. *Id.* at 206. Because the father did not file an objection with thirty days, the court reasoned that mother, as a matter of law, could move the child out of state and not even the court could challenge that decision. *Id.* That conclusion is simply not warranted by the plain language of the statute, nor by the intent of the statute,[1]

---

1. Contrary to the conclusions reached in Jill S. Kingsbury, *Mommy, Are We Moving? No*

and leads us to the present case wherein a parent claims that any sort of "actual notice" waives the statutorily-mandated notice and allows relocation as a matter of law, a relocation that is essentially unreviewable by the court. *See In re Wright*, 129 S.W.3d 882, slip op. (Mo.App. W.D. 2004); *see also Heslop v. Sanderson*, 123 S.W.3d 214 (Mo.App. W.D.2003). I write separately to encourage, in the appropriate case, a thoughtful revisiting of *Baxley* and its progeny.

*... Maybe ... Yes...."—The Evolution of Missouri's Relocation Law*, 60 J. Mo. Bar 83 (Mar.-Apr.2004), the statute was not enacted to make it easier for relocating parents with children, but rather to give stability and to increase both parents' input when one parent chooses to relocate. Prior to the statutory change, numerous newspaper articles appeared highlighting the dilemma a parent faces upon discovering during an attempted visitation that the children have moved without any notice at all. The purpose of the statute was to insure notice *prior* to any move and to provide consequences for the failure to provide notice. *See Wright*, 129 S.W.3d at 887–89.