**In re the Marriage of: Rocio CORTEZ, Petitioner–Appellant,**

v.

**Jessus CORTEZ, a/k/a Jesus Cortez, Respondent–Respondent.**

**No. SD 30099.**

Missouri Court of Appeals, Southern District, Division One.

July 29, 2010.

Susan F. Butler, Joplin, MO, for Appellant.

Stephen P. Seigel, Springfield, MO, for Respondent.

DON E. BURRELL, Judge.

Rocio Cortez ("Mother") sent Jessus[1] Cortez ("Father") a certified letter informing him that in sixty days she would be moving with their daughter ("Child") from Noel, Missouri (where Father also resided) to Dallas, Texas. Because Father did not file an objection to Mother's proposed move within thirty days, Mother left as announced even though Father had at that point filed a motion opposing Child's relocation. After holding an evidentiary hearing, the trial court entered a judgment denying the relocation and ordering Mother to return Child to Missouri. Under Missouri law, if a notice of proposed relocation complies with the requirements of section 452.377,[2] a failure by the parent receiving the notice to file an objection within 30 days waives any objection to the proposed move and the parent giving notice has "an absolute right to relocate" the child. *See Dent v. Dent,* 248 S.W.3d 646, 648 (Mo.App. E.D.2008).[3] Because Mother's proposed relocation notice did not meet all of the requirements of section 452.377.2, Father's failure to challenge it within thirty days did not deprive the trial court of its authority to deny Child's relocation.

---

1. Father's first name is spelled in various pleadings as either "Jessus" or "Jesus." We use the spelling used by Mother in her notice and by Father in his brief.

2. All statutory references are to RSMo 2000.

3. This concept of automatic approval is sometimes referred to as "non-court-ordered relocation." *See, e.g., Melton v. Collins,* 134 S.W.3d 749, 751 (Mo.App. S.D.2004).

## Factual and Procedural Background

Viewed in the light most favorable to the trial court's judgment, *Dixon v. Dixon*, 62 S.W.3d 589, 592 (Mo.App. W.D.2001), the facts are as follows. Child resided primarily with Mother.[4] On or about December 7, 2008, Mother sent Father the following letter by certified mail ("notice"):

I[,] [Mother][,] notify by this notarized letter the reason I need to leave the State of Missouri. I have Carp [sic] tunnel on my hands, which [sic] I just had a surgery on my left elbow not to [sic] long ago do [sic] to my job. I haven't recovered well from that surgery[.] I still have a lot of pain and my doctor recommends me [sic] to leave my job because it can cause complications in my hands.

I believe that if I continue with this job I will not be able to provide a better future for my daughter. That's why I have decided to move to Dallas, Texas, where I have the opportunity to go to school and educate myself and get a better job and maybe be self-employed for my daughter and me.

Also, I'll be closer to my family, which right now I have [sic] my mom very ill, she was diagnosed with leukemia. Through this letter and this [sic] reasons I let [Father], father of my daughter [Child] know 60 days in advanced [sic] that I'm leaving the State of Missouri, and the addresses were [sic] we are going to live and the school where my daughter [Child] will be attending.

Towards the visitations we need to come to an agreement for the well being of my daughter and us. People who I will be living with are [a woman's full name] and her son[,] [the son's full name].

The address of the persons Mother said she would be residing with, along with the full name and address of the school Mother said Child would be attending, were then set out beneath Mother's notarized signature.

On January 29, 2009 (fifty-three days after the date on Mother's notice[5]), Father filed an "Affidavit and Motion for Order Preventing Relocation of the Residence of the Minor Child, or in the Alternative, Modify the Judgment of Dissolution of Marriage."

Without waiting for any ruling by the court on Father's alternative motions, Mother moved with Child to Dallas on or about March 3, 2009. Father found out about the move by chance one day before it occurred when someone from Child's school called to ask him if he wanted Child's transcripts of her records. When Father said he did not understand what he was being asked about, Father related that the person on the phone said, "[W]ell, your ex just pulled her out of school and she— they're leaving to Texas."

On March 18, 2009, Mother filed a motion to dismiss Father's motion to prevent relocation or modify the existing dissolution decree on the same grounds asserted in this appeal.

The trial court held an evidentiary hearing regarding Child's relocation on July 30, 2009. According to Mother, she is not fluent in English but "can read it a little

---

4. Although a copy of the dissolution decree was not included in the record on appeal, the parties' marriage was apparently dissolved on July 2, 2008, in a decree that awarded them "joint custody" of Child and designated Mother's address as Child's principal residence.

5. Although the record does not reveal the date on which Father actually received Mother's notice, Father does not dispute Mother's claim that he received it more than 30 days before he filed any objection to Mother's announced intention to relocate.

and [ ] write it a little."[6] When Mother was asked by Father's counsel about the purpose of her move to Texas, the following exchange took place:

Q. And what was the purpose of you moving to Texas?

A. Because I want to go to school, I'm attending school there in Texas, I have exams next week and I want to improve myself. While I was here, I never did.

Q. Why did you move to Dallas?

A. Because I wanted to be with my family, my mother was sick and my mother has since passed away, but I had already sent the letter and everything.

Q. Was it your mother that was sick or your grandmother?

A. She was my mother because she's the one that raised me. And I'm registered with all of her last names and everything.

Q. They live in Dallas?

A. No, she was in Mexico and that's closer for me to get there than from here to there.

Q. So do you have any family that lives in Dallas?

A. No, just friends.[7]

Mother also testified that the schooling she referred to was to help her "get [her] GED."[8] Mother testified that she was unable to find appropriate GED classes near Noel because none in that area were taught in Spanish.

Father testified that before Mother left for Texas, Father "saw [Child] every day at school, I would eat lunch with her ... on a daily basis." Child also typically stayed with Father for an hour after school three or four times a week. Father had Child every Wednesday until 8:00 p.m. Once every two weeks, Child would stay with Father from Friday through Monday. Father was also the vice-president of the "parent/teacher's [sic] partnership" at Child's school.

At the conclusion of the hearing, the trial court announced it was "going to deny the relocation. Also going to deny, and I think there was both, both sides have in the alternative, a motion to modify, [9] those will be denied. We'll stick with the original court order." The trial court then ordered Mother to return Child to Missouri by September 7, 2009. On August 19, 2009, the trial court memorialized its previously announced ruling in the written judgment Mother now timely appeals.

## Standard of Review

▪ "Our review of the trial court's ruling with respect to a § 452.377 motion to prevent a proposed relocation is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the trial court's ruling if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Herigon v.*

---

6. An unidentified person was sworn in by the trial court to interpret the proceedings for Mother.

7. One of Father's concerns about Child's relocation to Texas was that Mother was pregnant with a child fathered by Mother's boyfriend who was an illegal alien from Mexico. According to Father, Mother had threatened "that at some point they could probably just get up and leave to Mexico and I'd never see [Child] again."

8. We presume this is an acronym for "general equivalency diploma."

9. Although one of the caption headings in Mother's written response to Father's alternative motions was entitled "Motion to Modify," that response simply asked the trial court to deny Father's motions—it did not request modification of the existing decree.

*Herigon,* 121 S.W.3d 562, 564–65 (Mo.App. W.D.2003) (internal citations omitted).

## Analysis

■ In a single, narrow point relied on, Mother claims the trial court erroneously declared or applied the law when it ordered Mother to return Child to Missouri because Mother acquired an absolute right to relocate Child when Father did not object to her proposed relocation within 30 days of receiving Mother's notice.[10]

Section 452.377 governs the relocation of minor children of divorced parents and provides, in pertinent part:

1. For purposes of this section and section 452.375, **"relocate"** or **"relocation"** means a change in the principal residence of a child for a period of ninety days or more, but does not include a temporary absence from the principal residence.

2. Notice of a proposed relocation of the residence of the child, or any party entitled to custody or visitation of the child, shall be given in writing by certified mail, return receipt requested, to any party with custody or visitation rights. Absent exigent circumstances as determined by a court with jurisdiction, written notice shall be provided at least sixty days in advance of the proposed relocation. The notice of the proposed relocation shall include the following information:

(1) The intended new residence, including the specific address and mailing address, if known, and if not known, the city;

The home telephone number of the new residence, if known;

(2) *The date of the intended move or proposed relocation;*

(4) A brief statement of the specific reasons for the proposed relocation of a child, if applicable; and

(5) *A proposal for a revised schedule of custody or visitation with the child, if applicable.*

Section 452.377 (emphasis added).

■ "[T]o satisfy fully the notice requirements of § 452.377.2, other than the requirement that the notice be in writing by certified mail, the actual notice must also include the informational requirements of that subsection." *Herigon,* 121 S.W.3d at 565 (citing *Baxley v. Jarred,* 91 S.W.3d 192, 205 (Mo.App. W.D.2002)).

Although Mother's notice arguably did not state a "date" for her proposed move as required by section 452.377.2(3), it did provide Father with at least 60 days advance notice of her intent to relocate Child. In any event, we need not decide whether Mother's notice met the intended date of move requirement set forth in section 452.377.2(3) because her failure to include in her notice a "proposal for a revised schedule of custody or visitation with

10. Because Mother's point claims only that she was entitled to an automatic relocation, our review in this case is correspondingly narrow. Mother has not challenged the sufficiency of the evidence to support the trial court's decision, has not claimed that the court abused its discretion, and has not asserted that the denial of relocation was not in Child's best interest. Instead, Mother has chosen to rely entirely on her claim that Father's failure to timely object to her announced relocation gave her an absolute right to non-court-ordered relocation and deprived the trial court of "jurisdiction to hear the case." In accordance with the principles set forth in *J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249 (Mo. banc 2009), we construe Mother's assertion that the trial court lacked "jurisdiction" as a claim that it lacked the statutory authority necessary to hear Father's request for relief.

[Child]" as required by section 452.377.2(5) is fatal to her claim.[11]

The only reference to custody or visitation in Mother's notice stated, "Towards the visitations [sic] we need to come to an agreement for the well being of my daughter and us." We are not convinced that an announcement of a need to come to an agreement at some unspecified future time is the equivalent of the "proposal for a revised schedule of custody or visitation" mandated by section 452.377.2(5). *See Swisher v. Swisher,* 124 S.W.3d 477, 484–85 (Mo.App. W.D.2003), and *Dorman v. Dorman,* 91 S.W.3d 167, 172 (Mo.App. W.D.2002) (cases in which the parents providing notice of a proposed relocation had complied with section 452.377.2(5) by attaching revised parenting plans).

Although Mother correctly acknowledges in her brief that section 452.377.2 states a proposed relocation notice "shall" include the information required by each of its five subsections, Mother nowhere claims that her notice included a proposal for a revised contact schedule as mandated by section 452.377.2(5). Instead, Mother cites *Baxley v. Jarred, supra,* as support for an assertion that "strict compliance with [section 452.377.2] is not required." As earlier noted, *Baxley* stands for the proposition that notice by *certified mail* is not required if actual notice is proven *and all other requirements of section 452.377 are satisfied.* 91 S.W.3d at 205–06 (emphasis added). As a result, *Baxley* is easily distinguishable and does not help her.[12]

The trial court did not misstate or misapply the law. Mother's point is denied, and the judgment is affirmed.

BARNEY, J., and BATES, P.J., Concur.

---

11. Because of the significant distance between Noel, Missouri and Dallas, Texas, the contact schedule being utilized by the parties before the relocation was no longer practicable and would have to be modified. *See In re S.E.P. v. Petry,* 35 S.W.3d 862, 871–72 (Mo. App. W.D.2001) (stating it was unrealistic to expect the father and child to have a visitation schedule including single and part-day visits given the distance between them). As a result, we find that a "proposal for a revised schedule" was "applicable" in this case. *Melton v. Collins,* 134 S.W.3d 749 (Mo.App. S.D.2004), is instructive here. The notice in *Melton* was defective because it was sent after the move, provided only a temporary address and "failed to include all of the information required by section 452.377.2, in that it did not provide the home telephone number, the date of the intended move or relocation, a brief statement of the specific reasons for the proposed relocation, or *a proposal for a revised schedule of custody or visitation." Id.* at 754 (emphasis added).

12. Further, when Father argued in his brief that Mother's failure to include a proposed contact schedule defeated her claim that she had complied with all of the provisions of section 452.377, Mother stood silent and did not file a reply brief challenging that assertion.